# 11-5151

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

In re: APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER
PURSUANT TO 18 U.S.C. SECTION 2703(D)

———————————

UNITED STATES OF AMERICA,
*Plaintiff–Appellee,*

v.

JACOB APPELBAUM; ROP GONGGRIJP; BIRGITTA JONSDOTTIR,
*Defendants–Appellants,*

and

TWITTER, INCORPORATED,
*Defendant.*

———————————

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

---

### Public Brief of Movants-Appellants

---

Aden J. Fine
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Cindy A. Cohn
Lee Tien
Marcia Hofman
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
(415)-436-9333

*Attorneys for Birgitta Jonsdottir*

Rachael E. Meny
John W. Keker
Steven P. Ragland
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111
(415)-391-5400

*Attorneys for Jacob Appelbaum*

John D. Cline
Law Office of John D. Cline
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
(415)-322-8319

*Attorney for Rop Gonggrijp*

*(additional counsel listed on inside cover)*

Rebecca K. Glenberg
American Civil Liberties
  Union of Virginia
  Foundation, Inc.
530 E. Main Street,
  Suite 310
Richmond, VA 23219
(804)-644-8080

K.C. Maxwell
Law Office of K.C. Maxwell
235 Montgomery Street,
  Suite 1070
San Francisco, CA 94104
(415)-322-8817

Nina J. Ginsberg
DiMuroGinsberg, P.C.
  908 King Street,
  Suite 200
Alexandria, VA 22314
(703)-684-4333

John K. Zwerling
Stuart Sears
Zwerling, Leibig & Moseley,
  P.C.
180 North Alfred Street
Alexandria, VA 22314
(703)-684-8000

*Attorney for
Birgitta Jonsdottir*

*Attorneys for
Rop Gonggrijp*

*Attorneys for
Jacob Appelbaum*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT ...................................................... 1

ISSUES PRESENTED ......................................................................... 1

STATEMENT OF THE CASE ............................................................. 2

STATEMENT OF FACTS ................................................................... 3

    A.   Movants. ................................................................................. 3

    B.   Twitter. .................................................................................. 3

    C.   The December 14, 2010 Order To Twitter. ............................. 5

    D.   Movants' Motions To Unseal And For Public Docketing. ........ 7

        1.   The Motion To Unseal. .................................................... 8

        2.   The Motion For Public Docketing. .................................. 9

    E.   The District Court's Decision. ............................................. 13

    F.   The Subjects Of This Appeal. .............................................. 14

SUMMARY OF ARGUMENT ......................................................... 15

STANDARD OF REVIEW ............................................................... 16

ARGUMENT ................................................................................... 17

I.    THE DISTRICT COURT APPLIED THE WRONG STANDARD OF
    REVIEW IN EVALUATING THE MAGISTRATE'S ORDERS. ............... 17

II.   THE DISTRICT COURT ERRONEOUSLY PERMITTED THE
    JUDICIAL ORDERS TO COMPANIES OTHER THAN TWITTER
    AND ANY RELATED MOTIONS TO REMAIN SEALED. ....................... 20

    A.   There Is A Right Of Access To The Sealed Judicial Orders And
        Motions Under Both The Common Law And The First
        Amendment. ...................................................................... 21

i

B.   The Government Did Not Meet Its Burden To Overcome The
     Presumption Of Access To The Sealed Judicial Orders. ........................29

     1.   The Unsealing Of The Twitter Order Removed The Justification
          For Continued Sealing Of The Other § 2703 Orders And
          Motions. ..............................................................................29

     2.   The Generic Interests In Secrecy Proffered By The Government
          Do Not Satisfy Its Heavy Burden. ....................................32

     3.   The District Court Did Not Properly Credit The Public's
          Significant Interest In Obtaining Access To The Sealed Judicial
          Orders And Motions. ..........................................................35

     4.   The District Court Erred By Failing To Require An Individualized
          Sealing Analysis With Respect To Each Document. .......................40

     5.   The District Court Failed To Consider Alternatives To Sealing Or
          To Explain Why They Were Not Sufficient. ....................................43

III.   THE DISTRICT COURT ERRED IN FAILING TO REQUIRE PUBLIC
       DOCKETING OF THE SEALED JUDICIAL ORDERS AND
       RELATED DOCUMENTS. ..............................................................44

CONCLUSION ...................................................................................58

REQUEST FOR ORAL ARGUMENT ...............................................58

ii

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Holder*, No. 09-2086, 2011 WL 1108252 (4th Cir. 2011)........................41

*ALCOA v. EPA*, 663 F.2d 499 (4th Cir. 1981)...........................................17

*Alexander v. Boyd,* 113 F.3d 1373 (4th Cir. 1997)....................................16

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ............................. passim

*Bose Corp. v. Consumers Union, Inc.*, 466 U.S. 485 (1984) .................................18

*Catlin v. United States*, 324 U.S. 229 (1945) .............................................1

*CBS, Inc. v. U.S. Dist. Ct.,* 765 F.2d 823 (9th Cir. 1985)......................................50

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ...................................1

*Franks v. Delaware*, 438 U.S. 154 (1978) ...............................................28

*Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507 (4th Cir. 2002)............................39

*Haines v. Liggett Grp., Inc.*, 975 F.2d 81 (3d Cir. 1992) .......................................19

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) .................. passim

*Hicklin Eng'g L.C. v. Bartell and Bartell Assocs.*,
    439 F.3d 346 (7th Cir. 2006) ...............................................................24

*In re Charlotte Observer (United States v. Bakker)*,
    882 F.2d 850 (4th Cir. 1989).............................................................30

*In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984) ....................................43, 44

*In re Providence Journal Co., Inc.*, 293 F. 3d 1 (1st Cir. 2002) .............................17

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*,
    562 F. Supp. 2d 876 (S.D. Tex. 2008).............................................24, 36

*In re Search Warrant for Secretarial Area Outside the Office of
    Thomas Gunn*, 855 F.2d 569 (8th Cir. 1988) ...............................47, 48

*In re State-Record Co., Inc.*, 917 F.2d 124 (4th Cir. 1990).......................46, 47, 55

*Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011) ...................................38

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993) ......35

*Media Gen. Operations, Inc. v. Buchanan*,
    417 F.3d 424 (4th Cir. 2005) ................................................................. 18, 51, 56

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ...........................................27

*Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589 (1978) ................................passim

*Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002) .............................................19

*Pepsico v. Redmond*, 46 F.3d 29 (7th Cir. 1995) ............................................ 22, 36

*Press-Enter. Co. v. Super. Ct. of Cal.*,
    464 U.S. 501 (1984) (*Press-Enterprise I*) ........................................................20

*Press-Enter. Co. v. Superior Ct. of Cal.*,
    478 U.S. 1 (1986) (*Press-Enterprise II*) .................................................. 23, 25, 26

*Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988) ..... 20, 24, 40

*Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178 (4th Cir. 1988) ............ passim

*Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562 (7th Cir. 2000) .............................22

*United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983) .........................................26

*United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998) ..................................26

*United States v. Mentzos*, 462 F.3d 830 (8th Cir. 2006) ................................. 24, 36

*United States v. Mitchell*, 551 F.2d 1252 (D.C. Cir. 1976),
    *rev'd on other grounds sub nom. Nixon v. Warner Commc'ns Inc.*,
    435 U.S. 589 (1978) .........................................................................................22

*United States v. Moussaoui*, 65 F. App'x 881 (4th Cir. 2003) .................. 22, 27, 36

*United States v. Ochoa-Vasquez,* 428 F.3d 1015 (11th Cir. 2005).........................45

*United States v. Simone*, 14 F.3d 833 (3d Cir. 1994) ............................................26

*United States v. Soussoudis* (*In re Wash. Post Co.*),
    807 F.2d 383 (4th Cir. 1986)................................................................. passim

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993) ............................ 32, 47, 57

*Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2004)........... passim

*Wash. Post Co. v. Hughes*
   *(In re Application & Affidavit for a Search Warrant)*,
   923 F.2d 324 (4th Cir. 1991) ..................................................................... passim

**Statutes**

18 U.S.C. § 2518 ..........................................................................................25

18 U.S.C. § 2703 ..................................................................................... passim

18 U.S.C. § 2705 ......................................................................................6, 24

18 U.S.C. § 3123 ..........................................................................................24

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 636 ...........................................................................................19

Electronic Communications Privacy Act,
   Pub. L. No. 99-508, 100 Stat. 1848 (1986) ...........................................38

**Other Authorities**

Aaron Smith, *Twitter Update 2011,* Pew Internet & American Life Project, (June
   2011), *available at* http://www.pewinternet.org/Reports/2011/Twitter-Update-
   2011.aspx ...................................................................................................4

Barton Gellman, *Twitter, Wikileaks and the Broken Market for Consumer Privacy*,
   Time Magazine: Techland (Jan. 14, 2011, 2:30PM),
   http://techland.time.com/2011/01/14/twitter-wikileaks-and-the-broken-market-
   for-consumer-privacy/ ...............................................................................7

David Batty, US Orders Twitter To Hand Over WikiLeaks Members' Private
   Details, The Guardian, Jan. 8, 2011 ...........................................................7

*ECPA Reform and the Revolution in Cloud Computing: Hearing Before the
   Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the H. Comm.
   on the Judiciary*, 111th Cong. (Sept. 23, 2010) ...................................38

Electronic Communications Privacy Act Amendments Act of 2011, S. 1011, 112th
  Cong. (2011) ........................................................................................38

*Espionage Act and the Legal and Constitutional Issues Raised by WikiLeaks:
  Hearing Before the H. Comm. On the Judiciary,*
  111th Cong. (Dec. 16, 2010) ...............................................................37

Graeme McMillan, *How Many People Actually Use Twitter? Good Question*,
  Time Magazine Techland Blog (Aug. 29, 2011),
  http://techland.time.com/2011/08/29/how-many-people-actually-use-twitter-
  good-question/#ixzz1jNz7bnbT .............................................................4

*In WikiLeaks' Wake, Administration Tightens Information Security*, OMB Watch,
  Jan. 11, 2011, http://www.ombwatch.org/node/11452 .......................37

Jack Goldsmith, *Seven Thoughts on Wikileaks*,
  Lawfare Blog (Dec. 10, 2010, 4:38PM),
  http://www.lawfareblog.com/2010/12/seven-thoughts-on-wikileaks/ ...............36

Judicial Conference Policy on Sealed Cases, Sept. 13, 2011, *available at*
  http://www.uscourts.gov/uscourts/News/2011/docs/
  JudicialConferencePolicyonSealedCivilCases2011.pdf .....................50

Marc A. Thiessen, *Obama Administration Is Weak in the Face of WikiLeaks*,
  Wash. Post, Nov. 29, 2010, *available at* http://www.washingtonpost.com/wp-
  dyn/content/article/2010/11/29/AR2010112902474.html ...................36

Mem. on Sealed and Conf. Materials, United States Court of Appeals for the
  Fourth Circuit (Oct.17, 2011).................................................................49

Michael Zachary, *Rules 58 and 79(a) of the Federal Rules of Civil Procedure:
  Appellate Jurisdiction and the Separate Judgment and Docket Entry
  Requirements,* 40 N.Y.L. Sc. L. Rev. 409 (1996) ..............................49

Neil MacFarquhar, *Twitter and Facebook are Backbone of Saudi Dissent*, N.Y.
  Times, June 15, 2011, at A6, *available at*
  http://www.nytimes.com/2011/06/16/world/middleeast/16saudi.html ................4

Notice to the Bar, United States Court of Appeals for the Third Circuit
  (Nov. 4, 2011) .......................................................................................49

Obama Calls WikiLeaks' "Deplorable," Reuters, Dec. 11, 2010, available at
  http://www.reuters.com/article/idUSTRE6BA24B20101211 .............37

*Online Activities, 2000-2009*, Pew Internet & American Life Project,
 http://pewinternet.org/Static-Pages/Trend-Data/Online-Activities-20002009.aspx
 (last visited Jan. 19, 2012) ....................................................................................37

Paul Lanois, *Caught in the Clouds: The Web 2.0, Cloud Computing, and Privacy?*,
 9 Nw. J. Tech. & Intell. Prop. 29 (2010) ............................................................38

*Report of the Proceedings of the Judicial Conference of the United States*,
 March 17, 2009, at 11, *available at*
 http://www.uscourts.gov/FederalCourts/JudicialConference/Proceedings/Proceed
 ings.aspx?doc=/uscourts/FederalCourts/judconf/proceedings/2009-03.pdf .......57

Scott Shane & John F. Burns, *U.S. Subpoenas Twitter Over WikiLeaks Supporters*,
 N.Y. Times, Jan. 9, 2011, at A1, *available at*
 http://www.nytimes.com/2011/01/09/world/09wiki.html ....................................7

Tim Reagan & George Cort, Fed. Judicial Ctr.,
 *Sealed Cases in Federal Courts* (2009) ...............................................................50

*Top 500 Global Sites*, Alexa, http://www.alexa.com/topsites
 (last visited Jan. 19, 2011) .....................................................................................4

## Rules

4th Cir. R. 25 ....................................................................................................44, 50

4th Cir. R. 34..........................................................................................................50

E.D. Va. Local Crim. R. 49............................................................................ 44, 50, 51

Fed. R. Civ. P. 45...................................................................................................25

Fed. R. Civ. P. 72...................................................................................................17

Fed. R. Crim. P. 55........................................................................................... 49, 51

Fed. R. Crim. P. 59................................................................................................17

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 28 U.S.C. § 1331.  This Court

has jurisdiction pursuant to 28 U.S.C. § 1291 because the district court's

November 10, 2011 order is a final decision ending the litigation on the merits of

Movants' motion to unseal and motion for public docketing by denying the relief

requested.  *Catlin v. United States*, 324 U.S. 229, 233 (1945).  In the alternative,

the district court's order is an appealable collateral order under *Cohen v. Beneficial*

*Indus. Loan Corp.*, 337 U.S. 541 (1949).  *See Va. Dep't of State Police v. Wash.*

*Post*, 386 F.3d 567, 574 (4th Cir. 2004).[1]

Movants filed a timely notice of appeal on November 23, 2011.  JA-283.

## ISSUES PRESENTED

1.    Did the district court erroneously continue to seal judicial orders

requiring the disclosure of information about Movants' Internet communications

where the Magistrate and the government previously conceded that unsealing an

order to Twitter was in the best interest of the government's investigation and

where the government failed to establish that disclosing any other judicial orders or

---

[1] Although a petition for a writ of mandamus is ordinarily the "preferred method of review" of orders sealing records, *see, e.g.*, *United States v. Soussoudis* (*In re Wash. Post Co.*), 807 F.2d 383, 388 (4th Cir. 1986), a notice of appeal was filed here because the district court order being appealed also includes the denial of Movants' motion to vacate the Twitter Order.  If this Court believes that mandamus is nevertheless the appropriate method of review here, it should treat the appeal as a petition for mandamus.  *Id.*

related motions, redacted if necessary, would cause any harm to its investigation sufficient to overcome the significant public interest in access to these judicial orders and motions?

2.    Did the district court err in holding that there need not be a public docket sheet identifying the name and date of any judicial orders to companies other than Twitter and any related court filings?

## STATEMENT OF THE CASE

Movants-Appellants Jacob Appelbaum, Rop Gonggrijp, and Birgitta Jonsdottir ("Movants") initiated this action by filing a motion to challenge an order issued by the Magistrate pursuant to 18 U.S.C. § 2703(d), which required Twitter to provide private, non-public information to the government concerning Movants' communications, associations, and locations (the "Twitter Order").  They also challenged the sealing of judicial documents related to the Twitter Order and similar judicial orders to companies other than Twitter, and the absence of any public docketing concerning these judicial orders.

The Magistrate (Buchanan, M.J.) denied Movants' motions in three separate orders.  Movants filed Objections to each of the Magistrate's orders.  The district court (O'Grady, J.) denied those Objections.  This appeal followed.

Movants' appeal addresses only the sealing and public docketing portions of the district court's order.

2

# STATEMENT OF FACTS

## A. Movants.

Birgitta Jonsdottir is an elected Member of the Parliament of Iceland.  She used Twitter.com as part of her political campaign for Parliament and, since her election, has used it to publish "tweets" about her political positions, activities, and work as a Member of Parliament.

Jacob Appelbaum is a well-known computer security researcher and photographer who is a U.S. citizen.  He regularly uses Twitter to post messages on numerous topics, including Internet censorship, human rights issues, Internet security, and other political and social issues in the U.S. and abroad.

Rop Gonggrijp is a Dutch activist and businessman.  He is the founder or co-founder of several technology companies, and is well-known in the Netherlands and abroad as an expert in computer and telecommunications security.  He uses Twitter to post messages through his blog, http://rop.gonggri.jp/.

## B. Tw    itter.

Twitter is an online micropublishing tool that permits individuals to communicate with other people around the world, on any subject, in messages of 140 characters or less.  Twitter is one of the fastest growing forms of communication in the world, with over 360 million reported registered users as of August 2011, including individuals, corporations, governmental entities, and

elected officials.[2]  By some estimates it is the tenth largest website in the world.[3]

Twitter has been an especially vital form of communication for individuals who

either do not have means of access to more traditional media or who live in

repressive societies where freedom of speech is not protected, most recently in

Syria, Egypt, and Saudi Arabia.[4]

To publish material on Twitter, an individual needs to sign up for a Twitter

account.  Once that account is opened, a subscriber can publish messages using the

account ("tweets"), sign up to receive others' tweets (those one is "following"),

and have others follow his or her tweets (one's "followers").  In addition to a

tweet's content, the time and date of each tweet also appears publicly.  The

location from where the tweet was made, which may be derived from the Internet

Protocol address collected by Twitter, is not publicly available.  In addition to

public tweets, Twitter users may also use Twitter to communicate privately with

---

[2] Graeme McMillan, *How Many People Actually Use Twitter? Good Question*, Time Magazine Techland Blog (Aug. 29, 2011), http://techland.time.com/2011/08/29/how-many-people-actually-use-twitter-good-question/#ixzz1jNz7bnbT.

[3] *Top 500 Global Sites*, Alexa, http://www.alexa.com/topsites (last visited Jan. 19, 2011); *see also* Aaron Smith, *Twitter Update 2011,* Pew Internet & American Life Project, (June 2011), *available at* http://www.pewinternet.org/Reports/2011/Twitter-Update-2011.aspx (13% of Internet users use Twitter as of June 2011, up from 8% in November 2010).

[4] Neil MacFarquhar, *Twitter and Facebook are Backbone of Saudi Dissent*, N.Y. Times, June 15, 2011, at A6, *available at* http://www.nytimes.com/2011/06/16/world/middleeast/16saudi.html.

other Twitter users via direct messages ("DMs").  All information regarding those DMs, including their content, their sender and recipient, and their time and date, is not publicly available.

### C. The      December 14, 2010 Order To Twitter.

In response to an Application by the United States and apparently as part of the investigation into WikiLeaks, the Magistrate issued an Order on December 14, 2010 that requires Twitter to disclose private information concerning the communications activities of several of its subscribers, including Movants (the "Twitter Order").  *See* JA-19–21 (Twitter Order).  The Twitter Order demands information concerning certain individuals, and four identified Twitter accounts: @wikileaks, @ioerror, @birgittaj, and @rop_g.  Movants are the holders of the last three accounts.  Among other things, the Order requires Twitter to disclose Movants' (1) personal contact information, (2) financial data, (3) account activity information, including the date, time, and length of connections, as well as the source and destination Internet Protocol address(es),[5] and (4) DM information, including the email addresses and IP addresses of everyone with whom the user sent and received DMs.  JA-21.  The Order covers all activity on the accounts,

---

[5] An Internet Protocol ("IP") address is a unique numerical address that identifies individual computers or other devices as they interact over the Internet.  IP addresses can be used to determine where a computer is located when it is connected to the Internet.

regardless of subject matter, for the time period from November 1, 2009 to the present.

The Twitter Order was issued pursuant to 18 U.S.C. § 2703(d), which controls government access to "record[s] or other information pertaining to a subscriber to or customer of" an "electronic communication service or remote computing service." *Id.* § 2703(c). This information may be obtained with a warrant, administrative subpoena, or § 2703(d) court order. *Id.* § 2703(a)-(b), (d).

The statute does not contain a provision permitting the sealing of orders issued pursuant to its terms. Prior notice to the affected subscriber, however, is not statutorily required if the government only seeks disclosure of "a record or other information pertaining to a subscriber to or customer of [an electronic communication or remote computing] service." *Id.* § 2703(c). Where the government is not required to provide notice, the government may obtain a court order commanding the communications provider not to notify anyone of the existence of the warrant, subpoena, or court order "for such period as the court deems appropriate," if the court determines that notification "will result in" a specifically defined adverse result. *Id.* § 2705(b).

The Twitter Order and all related court documents were filed under seal. The Order expressly prohibited Twitter from disclosing it to anyone, presumably pursuant to a finding under § 2705(b). JA-20. Shortly after its issuance, however,

the government filed a motion to unseal it.  JA-65.  That motion is still under seal,

despite the government's agreement that it should no longer be under seal.  JA-65.

On January 5, 2011, the Magistrate granted the government's motion and issued an

Order unsealing the Twitter Order (the "Unsealing Order").  JA-23.  The Unsealing

Order states that "it is in the best interest of the investigation to unseal the Court's

Order of December 14, 2010 and authorize Twitter to disclose that Order to its

subscribers and customers."  JA-23.

### D.  Movants' Motions To Unseal And For Public Docketing.

On January 7, 2011, following issuance of the Unsealing Order, Twitter sent

the Twitter Order to Movants, along with emails informing Movants that Twitter

would be forced to comply with the Order unless Movants took appropriate legal

actions.  JA-25.  The disclosure of the Twitter Order was front-page news around

the world.[6]  Widespread interest focused on whether similar orders had been issued

to other companies concerning Movants and the other targeted individuals.[7]

---

[6] *See, e.g.*, Scott Shane & John F. Burns, *U.S. Subpoenas Twitter Over WikiLeaks Supporters*, N.Y. Times, Jan. 9, 2011, at A1, *available at* http://www.nytimes.com/2011/01/09/world/09wiki.html; David Batty, US Orders Twitter To Hand Over WikiLeaks Members' Private Details, The Guardian, Jan. 8, 2011.

[7] *See, e.g.*, Barton Gellman, *Twitter, Wikileaks and the Broken Market for Consumer Privacy*, Time Magazine: Techland (Jan. 14, 2011, 2:30PM), http://techland.time.com/2011/01/14/twitter-wikileaks-and-the-broken-market-for-consumer-privacy/.

On January 26, 2011, Movants filed a motion to vacate the Twitter Order. They also filed a motion to unseal any remaining sealed judicial documents concerning the Twitter Order and any § 2703 orders and related documents involving companies other than Twitter, and to require public docketing. Movants filed these motions using the docket number, "10-GJ-3793," listed on the Twitter Order and the Unsealing Order.

### 1.    The Motion To Unseal.

The Clerk's Office *sua sponte* placed Movants' motions under seal. Because they contained no non-public information, Movants moved to unseal them. The government opposed, but on February 7, 2011, the Magistrate issued an order unsealing Movants' papers and stating that further requests to seal must be accompanied by a motion and notice of hearing. JA-57. The Magistrate then issued another order, on February 9, 2011, stating that other than the documents unsealed by the February 7 order, all other previously or subsequently filed documents would remain under seal until further order of the court. JA-60. The same day, the Magistrate issued another order requiring the parties to specify which, if any, pleadings should remain sealed. JA-59. In its subsequent filing, the government conceded that all but two remaining documents should be unsealed, including Movants' motions and the government's earlier motion to unseal the Twitter Order. JA-62–63.

Oral argument on Movants' motions was held on February 15, 2011. The Magistrate issued a Memorandum Opinion and an Order on March 11, 2011, denying the motion to vacate, and granting, in part, and denying, in part, the motion to unseal. JA-104–124. With respect to the motion to unseal, the Magistrate first held that all of the litigation papers related to Movants' motions should be unsealed, with the exception of the redaction of a government attorney's email address from one document. JA-124. The Magistrate then held that all documents other than those related to Movants' motions should remain sealed. JA 124. The Magistrate did not unseal the government's motion to unseal the Twitter Order despite the government's agreement to unseal it. The Magistrate took the public docketing issues under consideration.

On March 28, 2011, Movants filed timely Objections to the Magistrate's denial of their motion to vacate and their motion to unseal with the district court. The district court subsequently cancelled oral argument and informed the parties that it would rule on the papers.

## 2.    The Motion For Public Docketing.

Following the filing of Movants' motions under the original docket number 10-GJ-3793, the Court created a new docket number, 1:11-dm-00003, to handle the litigation documents regarding the motions. None of the documents existing prior to the filing of Movants' motions, including the Twitter Order, the government's

Application for that Order, or the government's motion to unseal the Twitter

Order, were filed or docketed in this new 1:11-dm-00003 docket.  JA-1–15.  A

subsequent search of the Court's public docket revealed that three other dm docket

numbers were created at the same time, immediately after the filing of Movants'

motions:  1:11-dm-00001, 1:11-dm-00002, and 1:11-dm-00004.  A short time later,

1:11-dm-00005 was also created.  There are no publicly available docket entries

for these other dm matters.  Movants reasonably believe that these dockets were

created in connection with orders to companies other than Twitter, with each order

assigned to a different "dm" number.

On May 4, 2011, the Magistrate issued a one-page order concerning

Movants' request for public docketing.  It stated that "case 10-gj-3793 is hereby

transferred to new case 1:11-ec-3, which shall remain under seal except as to the

previously unsealed § 2703(d) Order of December 14, 2010 ("Twitter Order"), and

docketed on the running list in the usual manner."  JA-167.

Counsel for Movants was initially not permitted to view the "running list"

referenced in the May 4 Order at the Clerk's Office, but eventually was permitted

to view a one-page computer entry listing four "EC" cases—1:11-ec-00001, 1:11-

ec-00002, 1:11-ec-00003, and 1:11-ec-00004.  JA-168.  There was no information

on this one-page entry other than these docket numbers, the fact that they were all

assigned to Magistrate Buchanan, and that the dockets had been created on the

days immediately before and after the May 4 Order.  *Id.*

After Movants, through counsel, contacted the Clerk's Office and the

Magistrate's chambers, Movants were informed that additional information would

be publicly docketed on the running list.  JA-169.  The new list was identical to the

one-page computer entry Movants had previously seen, except that two new

notations had been added regarding the individual documents associated with the

ec-3 (Twitter) docket, and the list now included references to an ec-5, ec-6, ec-7,

ec-8, and ec-9 docket.  JA-175–177.  Unlike the ec-3 docket, the other EC dockets

contain no individual docket entries or other information indicating what

documents have been filed.  All that appears for them is a case name, "USA v.

Under Seal," the name of the judge assigned to the matter, the date the matter was

put on the EC list, and miscellaneous case assignment information.  As with the

parallel dm-1, dm-2, dm-4, and dm-5 docket numbers created following the filing

of Movants' original motions, Movants reasonably believe that the ec-1, ec-2, ec-4,

and ec-5 dockets, all created between May 2 and May 6 and assigned to Magistrate

Buchanan, concern § 2703-related orders to companies other than Twitter that

were the subject of Movants' motion for unsealing and public docketing.

Because this running list did not contain all of the requested information, on

May 19, 2011, Movants filed Objections to the Magistrate's May 4 Order.  On

June 1, 2011, the Magistrate issued another Memorandum Opinion and Order

(collectively, the "June 1 Order"). JA-206–07, 209. This new Order expressly denied Movants' request for public docketing of the non-Twitter documents. It held that while the court must create docket entries noting "that a sealing order has been entered," the court need not supply any information to the public beyond a case number for each matter and "whether a particular case is under seal." JA-206–07. The June 1 Order states that "[f]urther individual docket entries for all other types of documents filed in a sealed case would be of no real value to the public, other than providing fodder for rank speculation." *Id.*

On June 16, 2011, Movants filed Objections to the Magistrate's June 1 Order. Oral argument was cancelled by the district court, and the matter was taken under submission on the papers.

After briefing on all of the Objections was completed, ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████



### E. The        District Court's Decision.

On November 10, 2011, the district court issued a Memorandum Opinion and an Order denying all of Movants' Objections. The last nine pages of the sixty-page Memorandum Opinion, JA-274–82, address the motion for unsealing and public docketing.

With respect to the motion to unseal, the court found that there was no First Amendment right of access to the sealed documents because the government's application and affidavits contain "sensitive information" about the details of the government's criminal investigation, JA-276–77, and publicly disclosing the § 2703 affidavits would result in "no marked improvement" to the functioning of the judicial system, JA-277. The court similarly found that there was no common law right of access to any of the sealed documents, including the other § 2703 orders, and that the government's interest in protecting its ongoing investigation outweighed any interests for access. JA-278–81.

With respect to public docketing, the district court held that providing individual docket entries on the docket sheet would harm the government's investigation, that it is not required by either the First Amendment or the common law, and that the existing EC running list was legally sufficient. JA-277–78, 281.[8]

### F.   The Subjects Of This Appeal.

Movants filed a timely Notice of Appeal of the district court's denial of their motion to vacate the Twitter Order, the motion to unseal, and the motion for public docketing, on November 23, 2011. This appeal now only focuses on one section of the motion to unseal:  the judicial orders issued to companies other than Twitter and any motions and resulting orders concerning such orders.[9]  Movants also appeal the district court's denial of the request for public docketing.[10]

---

[8] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[9]  Before the district court, Movants sought the unsealing of all judicial records related to the Twitter Order and the other § 2703 orders, including § 2703 applications and affidavits.  Movants are not requesting the unsealing of those applications or affidavits on appeal.

[10] Movants filed a motion in the district court for a stay of its order denying the motion to vacate pending this appeal, but the district court denied that motion.  JA-14.  As a result, despite their belief that the Twitter Order is unconstitutional and not statutorily authorized, Movants are no longer appealing those issues.

# SUMMARY OF ARGUMENT

Public access to judicial records and judicial dockets is a core right enshrined both in the common law and the First Amendment. This presumption of access is at its apex with respect to judicial orders and motions, the sealed documents at issue here. The district court erred in denying the unsealing of these judicial orders and motions, as well as the case docket. The court also erred in failing to conduct a *de novo* review of the Magistrate's ruling.

With regard to unsealing, the government failed to meet its heavy burden to overcome the presumption of access to judicial orders and motions for three principal reasons. First, the government did not demonstrate a significant, let alone compelling, interest in continued sealing of these orders and motions because it removed the core reason for secrecy—tipping off the target of an investigation—when it unsealed the Twitter Order. Second, the public has a significant interest in access to these judicial orders and motions because they concern subjects of immense national interest—the government's investigation of WikiLeaks and the government's growing use of electronic surveillance measures. Finally, the government failed to establish why redacted versions of the judicial orders and motions would not eliminate any purported need for sealing.

15

The district court similarly erred in failing to require public docketing of these sealed judicial orders and related documents. Public docketing is an essential component of the right of access. This Court has therefore repeatedly made clear that even sealed judicial records must be publicly docketed in a manner sufficient to provide the public with notice and an opportunity to challenge the sealing, even in the context of an ongoing criminal investigation. The district court's refusal to require public docketing here cannot be reconciled with this clear caselaw.

In these specific circumstances, with these specific documents, both the common law and the First Amendment right of access mandate that these judicial orders and motions be unsealed and publicly docketed.

## STANDARD OF REVIEW

The district court's denial of the right of access under the First Amendment is reviewed *de novo*. *Va. Dep't of State Police*, 386 F.3d at 575.

The denial of access under the common law is reviewed for abuse of discretion. *Id.*; *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598-99 (1978). Questions of law that arise in the course of this review are reviewed *de novo*. *See, e.g.*, *Alexander v. Boyd,* 113 F.3d 1373, 1381 (4th Cir. 1997). In addition, because "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access . . . this review is

more rigorous than garden-variety abuse of discretion review." *In re Providence Journal Co., Inc.*, 293 F. 3d 1, 10 (1st Cir. 2002) (citations omitted).

## ARGUMENT

## I.   THE DISTRICT COURT APPLIED THE WRONG STANDARD OF REVIEW IN EVALUATING THE MAGISTRATE'S ORDERS.

The district court erred in applying a "clearly erroneous or contrary to law" standard of review to the Magistrate's denial of Movants' motions. *De novo* review was required for three principal reasons.

First, objections to a magistrate's order that dispose of an entire underlying matter are considered "dispositive" and reviewed *de novo*. *See, e.g.*, *ALCOA v. EPA*, 663 F.2d 499, 501-02 (4th Cir. 1981); Fed. R. Civ. P. 72(b); Fed. R. Crim. P. 59(b). Because the Magistrate's orders resolved Movants' requests for unsealing and public docketing, they are "dispositive" of this entire action. *See, e.g.*, *ALCOA*, 663 F.2d at 501-02 (holding that a Magistrate's order is dispositive where the motion before the Magistrate set forth all of the relief requested in the proceeding).

Second, the district court ignored controlling caselaw from this Court regarding the proper standard of review of the Magistrate's sealing decision. In *Wash. Post Co. v. Hughes (In re Application & Affidavit for a Search Warrant)*, 923 F.2d 324 (4th Cir. 1991) (Wilkinson, J.), the Court held that although a magistrate is authorized to issue search warrants, as with § 2703 orders, magistrate

17

judges do not have "indefinite authority over the disposition of district court documents." *Id.* at 326 n.2. To the contrary, the ultimate decision to grant or deny access is left to the discretion of the "trial court," which, according to the Court, means the district court judge, not a magistrate judge, even where the magistrate has the initial power to make the sealing decision. *Id.* (quoting *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)).[11] Because discretion lies in the district court, not in a magistrate, *de novo* review of the Magistrate's decision was required.[12]

Finally, in cases raising First Amendment questions like here, the reviewing court has an "obligation to make an independent examination of the whole record" to ensure that the decision does not violate First Amendment rights. *Bose Corp. v. Consumers Union, Inc.*, 466 U.S. 485, 499 (1984). The standard of review for the denial of Movants' First Amendment right of access is, therefore, *de novo*, whether an appellate court is reviewing a district court opinion or the district court is

---

[11] The district court attempted to distinguish *In re Application & Affidavit* by suggesting that the case only addressed "whether voir dire could be properly referred to a magistrate judge." JA-238. That is not correct. The issue was whether search warrant affidavits could be sealed. The Court expressly discussed whether discretion vests in the magistrate, who first issued the sealing order, or the district court, which unsealed the documents. The Court concluded that it was the latter.

[12] The district court's reliance on *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005), as the basis for a deferential review standard was erroneous. As the district court acknowledged, *Media General* "did not involve the standard of review for a district judge reviewing a magistrate's decision regarding § 2703 orders." JA-238.

reviewing a magistrate decision. *Va. Dep't of State Police*, 386 F.3d at 575 (holding that denials of the First Amendment right of access receive *de novo* review).[13]

Even if the district court were correct that a "contrary to law" standard applies, when courts review magistrate decisions on questions of law, they use a *de novo* standard. *See, e.g.*, *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992).

In a footnote, the district court claims that its conclusion regarding the standard of review does not matter because it also conducted a *de novo* review and reached the same result. JA-231. The district court's substantive analysis concerning the motion to unseal and docketing issues demonstrates, however, that the court did not conduct a *de novo* review. *See, e.g.*, JA-279 ("The Court sees no reason to disturb Magistrate Judge Buchanan's findings."). By applying the wrong standard, the district court failed to examine the Magistrate's decision with the required scrutiny.

---

[13] The district court erred for another reason. After reviewing the Magistrate Act, the court concluded that "magistrate judge jurisdiction was proper under § 636(b)(3)," and, thus, in the court's view, "no rule of procedure governs the standard of review here." JA-234. This Court has addressed that precise question, however: "duties additionally assigned to magistrates under 28 U.S.C. § 636(b)(3) are reviewed *de novo*." *In re Matter of Application and Affidavit for a Search Warrant*, 923 F.2d at 326 n.2.

## II. THE DISTRICT COURT ERRONEOUSLY PERMITTED THE JUDICIAL ORDERS TO COMPANIES OTHER THAN TWITTER AND ANY RELATED MOTIONS TO REMAIN SEALED.

That the judicial process should be open to the public is a principle enshrined in both the common law and the Constitution. *See, e.g.*, *Nixon,* 435 U.S. at 597 ("[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents."); *Va. Dep't of State Police*, 386 F.3d at 575 ("The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment.").

This presumption of access under the common law right may only be overcome if the government establishes "'some significant interest that outweighs the presumption'" and that its "'countervailing interests heavily outweigh the public interests in access.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). Where, as here, the First Amendment right of access is also implicated, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*).

"Regardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" *Va. Dep't of State Police*, 386 F.3d at 576 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)). This is not an unusual circumstance. To the contrary, the Twitter Order has already been unsealed and the judicial orders and motions at issue here, most of which have likely been complied with already, do not contain any sensitive, confidential information. Given that, the government cannot demonstrate any harm from unsealing, let alone significant harm, sufficient to heavily outweigh the public's significant interests in access.

A.    **There Is A Right Of Access To The Sealed Judicial Orders And Motions Under Both The Common Law And The First Amendment.**

Although § 2703 orders implicate novel technologies and legal processes, the presumption of access to judicial records is well established. Judicial transparency serves "the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of government." *Nixon*, 435 U.S. at 598 (internal citations omitted). As this Court has explained: "The value of openness in judicial proceedings can hardly be overestimated. 'The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.'" *United*

21

*States v. Moussaoui*, 65 F. App'x 881, 885 (4th Cir. 2003) (quoting *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)).

The public's interest in access "may be magnified" "[i]n the context of the criminal justice system":  "The public has legitimate concerns about methods and techniques of police investigation: for example, whether they are outmoded or effective, and whether they are unnecessarily brutal or instead cognizant of suspects' rights."  *In re Application & Affidavit for a Search Warrant*, 923 F.2d at 330-31.  Put simply, the right of access is "fundamental to a democratic state." *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976), *rev'd on other grounds sub nom.; Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589 (1978).

The common law right attaches to the judicial orders and motions at issue here.  This Court has made clear that "the common law presumption in favor of access attaches to *all* 'judicial records and documents.'"  *Stone*, 855 F.2d 178, 180 (Wilkinson, J.) (emphasis added) (quoting *Nixon*, 435 U.S. at 597); *see also Va. Dep't of State Police*, 386 F.3d at 575 (same).  That is especially the case with respect to orders, like the § 2703 orders at issue here, issued by federal judges, *see, e.g.*, *Pepsico v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) ("Opinions are not the litigants' property.  They belong to the public, which underwrites the judicial system that produces them."), but it is also true with respect to motions, like those

22

at issue here, filed by litigants upon which the court relies in performing its adjudicatory functions, *see, e.g.*, *Stone*, 855 F.2d at 180-81.

The First Amendment right of access also applies to these documents.  To determine if the First Amendment right attaches, courts conduct a two-pronged "experience" and "logic" analysis.  *See, e.g.*, *Press-Enter. Co. v. Superior Ct. of Cal.*, 478 U.S. 1, 8-9 (1986) (*Press-Enterprise II*).  The district court misstated this legal standard, holding that the right applies only "where (1) the place and process to which access is sought has historically been open to the press and general public; *and* (2) public access plays a significant positive role in the functioning of the particular process."  JA-275 (emphasis added).  The Supreme Court, however, has established that "experience and logic" are "complementary considerations," not dispositive elements that must each always be present.  *Press-Enterprise II*, 478 U.S. at 8-9, 11 n.3 (holding that a First Amendment right attached to the pretrial proceedings at issue even though they had "no historical counterpart," because the "importance of the . . . proceeding"—the logic prong—was clear).

Regardless, both the experience and logic prongs establish that there is a First Amendment right of access to the other § 2703 orders and motions.  First, there is an exceedingly long history of access to judicial opinions and orders.  Because the judiciary's very legitimacy stems from its issuance of reasoned decisions, judicial orders are core judicial records, subject to the right of access.

23

*See, e.g.*, *United States v. Mentzos*, 462 F.3d 830, 843 n.4 (8th Cir. 2006), *cert. denied*, 549 U.S. 1359 (2007) (denying motion to file opinion under seal "because the decisions of the court are a matter of public record"); *Hicklin Eng'g L.C. v. Bartell and Bartell Assocs.*, 439 F.3d 346, 348-49 (7th Cir. 2006) ("The Supreme Court issues public opinions in all cases, even those said to involve state secrets… We hope never to encounter another sealed opinion.") (internal citations omitted); *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008) (rejecting permanent sealing of § 2703(d) orders because "documents authored or generated by the court itself" are in the "top drawer of judicial records," a drawer that is "hardly ever closed to the public").[14]

As with other judicial orders, the default under § 2703(d) is that orders are openly accessible. It is only if the government makes a separate request and satisfies a specific standard, *see* 18 U.S.C. § 2705, that these orders can be secreted. That is in stark contrast to the other judicial orders to which the government has compared these orders—pen registers, trap and trace orders, and wiretap orders—which are sealed by statutory default. *See* 18 U.S.C. § 3123(d)(1) (stating that pen registers/trap and trace orders shall "be sealed until otherwise

---

[14] There is a similarly long tradition of access to documents, such as the motions at issue here, filed in civil or criminal proceedings that courts rely on to make determinations. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (holding that there is a First Amendment right of access to documents submitted in civil proceedings); *In re Wash. Post Co.*, 807 F.2d at 390 (same for documents filed in criminal proceedings).

ordered by the court"); 18 U.S.C. § 2518(8)(b) ("Applications made and orders granted under this chapter [of the Wiretap Act] shall be sealed by the judge.").[15]

Despite the statutory default of accessibility, there is not yet a long tradition of access to § 2703 orders for two principal reasons. First, § 2703 orders are relatively new proceedings, existing since only 1986, and only coming into prominence within the last ten years with the growth of the Internet and cell-phone use. Second, because, despite the statutory default, the government appears routinely to request the sealing of these orders pre-issuance, and then rarely moves to unseal them, making it impossible for anyone to ever know these orders exist or to challenge their sealing.

In any event, where, as here, a relatively new process is at issue, courts focus on the "logic" prong. Otherwise, the First Amendment right of access would artificially be limited to processes that existed in a prior era. *Press-Enterprise II*, 478 U.S. at 11 n.3 (noting that First Amendment right attached to the pretrial proceedings at issue there even though they had "no historical counterpart," where the "importance of the . . . proceeding"—the logic prong—was clear); *see also*

---

[15] The government has previously claimed that grand jury subpoenas are also an example of judicial "orders" that are not publicly accessible, but that argument is misplaced. Grand jury subpoenas may be treated as "court orders" for the purpose of holding recipients in contempt of court—just like normal civil subpoenas issued under Fed. R. Civ. P. 45—but they are not issued by a federal judge, they are not part of the court's records, and they do not express a judge's rationale for reaching a decision that affects the substantive rights of anyone.

*United States v. Gonzales*, 150 F.3d 1246, 1258 (10th Cir. 1998); *United States v. Simone*, 14 F.3d 833, 838 (3d Cir. 1994). *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983).

The "logic" prong of the analysis focuses on whether access to the sealed documents would serve a "significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8-9. The district court failed to conduct this analysis with respect to the other § 2703 orders. Instead, it focused exclusively on the government's § 2703 *applications and affidavits*, which Movants do not seek on appeal, JA-276–77; *see, e.g.*, JA-277 ("The Court can see no marked improvement that would result from recognition of a new First Amendment right of access to § 2703 application affidavits."). Had the court separately analyzed the judicial orders, as it was required to do, *see Stone*, 855 F.2d at 181; *see infra* at 40-42, it would have recognized that none of the secrecy concerns that it had with applications and affidavits were implicated by access to these § 2703 *orders* and motions, because they do not contain information such as the nature or background of the investigation, or the evidence underlying the investigation that may be found in the affidavits.

Proof of this is seen in the Magistrate's ruling unsealing the § 2703 order to Twitter, which found that unsealing was "in the best interest of the investigation" and in the unsealing of Movants' motions by the Magistrate, with the government's

agreement. Indeed, even a cursory look at the Twitter Order, ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████[16]

The district court's failure to consider the impact of making these § 2703 orders and motions accessible caused it to overlook the significant benefits that this openness would have. As both the Supreme Court and this Court have recognized, transparency concerning these judicial documents would ensure fairness, decrease bias, improve public perception of the justice system, and enhance the chances that the orders are well-justified and not overbroad. *See, e.g.*, *Nixon,* 435 U.S. at 598 (explaining that the law's recognition of the importance of judicial transparency serves "the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of government."); *Moussaoui*, 65 F. App'x at 885 ("The value of openness in judicial proceedings can hardly be overestimated.").

These reasons are especially potent here because the core of what is sought to be kept sealed are judicial orders and opinions—the very foundation of our judicial system. *See, e.g.*, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 587 (1976) (Brennan, J., concurring) ("Secrecy of judicial action can only breed

---

[16] To the extent the names of the recipients of the orders or the subjects of the orders are deemed sensitive, the solution is to redact that information from the publicly available versions of the documents, not to seal the entire documents. *See infra* at 43-44.

ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges; free and robust reporting, criticism, and debate can contribute to public understanding of the rule of law.").

The Court's decision in *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989), relied on heavily by the district court, is not to the contrary. In that case, the Court held that there is no First Amendment right of access to search warrant affidavits because of the centuries-old history of sealing those documents, even though there is a common law right to them. *Id.* at 64-65. That holding, however, concerns affidavits, not orders. Affidavits are sealed for the "common sense reason" to avoid tipping off the target of the search until after the warrant is executed "lest he destroy or remove the evidence." *Id.* at 64 (quoting *Franks v. Delaware*, 438 U.S. 154, 169 (1978)). But here, the government has already approved the disclosure of the existence of its investigation, and the concerns about destruction of evidence are misplaced, especially since all of the other orders have likely been complied with already. Because § 2703 orders are generally issued to third-party service providers for records under their exclusive control, such as the log files at issue in the Twitter Order, there is no serious danger that tipping off the subject of the search will lead to the destruction or removal of evidence.

**B.     The Government Did Not Meet Its Burden To Overcome The Presumption Of Access To The Sealed Judicial Orders.**

The district court erred in holding that the government met its burden with respect to either the common law or First Amendment right of access. First, the government did not demonstrate any legitimate interest in keeping the other § 2703 orders and related motions sealed in these circumstances, let alone a compelling interest, sufficient to heavily outweigh the public's significant interest in access. Second, even if there were such an interest, the government failed to establish why the sealing of these judicial orders in their entirety was necessary and why redacted versions would not eliminate any need for sealing.

**1.     The Unsealing Of The Twitter Order Removed The Justification For Continued Sealing Of The Other § 2703 Orders And Motions.**

Although the government may frequently have a legitimate interest in maintaining the secrecy of an ongoing criminal investigation and in avoiding tipping off potential subjects, that rationale for sealing the other § 2703 orders and related motions disappeared here with the unsealing of the Twitter Order.  First, the unsealing of that Order, at the government's request, confirmed the existence of the underlying criminal investigation.  Second, it publicly disclosed that the government is seeking information about Movants in connection with the WikiLeaks investigation.  Third, it revealed the specific information and the relevant time period being requested.  Thus, unsealing the § 2703 orders to

29

Movants' other service providers now would not lead to any additional risk of exposing the existence of a secret investigation or tipping off witnesses.  Any such risks, to the extent they ever existed, came to pass with the unsealing of the Twitter Order.   There is, thus, no justification, let alone a compelling interest, for keeping the other orders and motions under seal now.  *See, e.g., Va. Dep't of State Police*, 386 F.3d at 575 (holding that the government does not have a compelling interest in keeping information that is already publicly known secret); *In re Charlotte Observer (United States v. Bakker)*, 882 F.2d 850, 854-55 (4th Cir. 1989) (reversing sealing designed to prohibit the republication of information already in the public domain, and holding that "[w]here closure is wholly inefficacious to prevent a perceived harm, that alone suffices to make it constitutionally impermissible").[17]

The district court ignored this caselaw, instead asserting that unsealing this information already in the public domain "would create perverse incentives," JA-279, because "[f]or example, a party could leak a controversial sealed document to the press, then point to the ensuing publicity as evidence that further sealing is unnecessary," *id*.  Not only is this assertion completely at odds with the caselaw

---

[17]

from this Court and other circuits, the court's example is wildly misplaced here: the government, not Movants, disclosed the Twitter Order.

The district court also attempts to overcome the impact of the Twitter Order's unsealing by adopting the Magistrate's assertion that this "argument ignores the significant difference between revealing the existence of an investigation, and exposing critical aspects of its nature and scope." JA-279. That distinction is inapplicable to the judicial orders and motions at issue here, however, because, unlike the affidavits, they do not contain any sensitive information about the government's investigation.

The only potential interest for keeping the other § 2703 orders and motions sealed after the government unsealed the Twitter Order is that unsealing them could reveal the names of the other third-party recipients. Movants already know the identity of their other online service providers, however, so unsealing documents disclosing those names would not lead to any additional risk of the destruction of evidence; that risk, if it ever existed, was created by unsealing the Twitter Order. Even if the court concluded that the identities of the recipients can remain secret, the required solution is to unseal the documents with those names redacted. *See infra* at 42-43.

Finally, at a minimum, given that disclosing the Twitter Order was "in the best interest of the investigation," the government was required to come forward

with compelling reasons explaining why continued sealing of the other § 2703 orders is still justified.  The government did not do so.  Instead, it merely attempted to justify the Magistrate's failure to articulate why these judicial orders should remain sealed by asserting that even entertaining that challenge would confirm the orders' existence.  That circular argument would mean that sealed dockets could never be challenged, because, following the government's logic, ruling on a motion to unseal a "secret" docket—where the existence of the matter has not officially been confirmed—would reveal the docket's (and the documents') existence.  That is not the law.  *See, e.g.*, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) (striking down secret-docket system); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (invalidating use of sealed criminal dockets).

### 2.    The Generic Interests In Secrecy Proffered By The Government Do Not Satisfy Its Heavy Burden.

The district court held that sealing was appropriate because the government "clearly has a compelling interest in protecting its ongoing investigation here." JA-281.  That general interest, while obviously true as a general proposition, does not justify sealing the specific § 2703 orders and motions at issue here, because they do not contain any sensitive information that would seriously harm the investigation if disclosed.  The government does not dispute that, and neither the Magistrate nor the district court made a contrary finding.  Instead, the government

32

summarily asserts that secrecy is necessary because this is a pre-indictment, ongoing criminal investigation.  That is not sufficient to overcome the government's heavy burden, and it is at odds with prior decisions of this Court.

Because "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation," a generalized interest in "protecting the integrity of an ongoing law enforcement investigation" cannot justify sealing judicial documents.  *Va. Dep't of State Police*, 386 F.3d at 577-79.  Thus, "it is not enough [for the government] simply to assert this general principle without providing specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information" with respect to each document that the government wishes to keep secret.  *Id* at 579.  Instead, the government has the burden of presenting "specific facts and circumstances" to justify "the effort to restrict public access" to each specific document.  *Id.*; *see also Baltimore Sun*, 886 F.2d at 64-66 (vacating the sealing of pre-indictment search warrant affidavits on the ground that sealing must be justified by more than just a finding that "the public interest in the investigation of crime" outweighs the media's interest in access).

The government has not come close to meeting this burden with respect to these specific § 2703 orders and motions.  The generalized interests in secrecy it

has claimed are not even applicable to these specific circumstances or documents. The Magistrate cited the following general "reasons" for why documents related to ongoing investigations should be sealed, which the district court appears to have adopted: (1) "[s]ecrecy protects the safety of law enforcement officers;" (2) it "prevents destruction of evidence;" (3) it "protects witnesses from intimidation or retaliation;" and (4) it "prevents unnecessary exposure of those who may be the subject of an investigation, but are later exonerated." JA-121; JA-279 ("The Court sees no reason to disturb Magistrate Judge Buchanan's findings."). None of these rationales for secrecy are present here.

There is no risk to law enforcement from unsealing, and the government does not even assert that one exists. Nor is there a risk of destruction of evidence, *see supra* at 28, especially because the other orders have likely been complied with already. Protecting witnesses is also not an issue because these §2703 orders were presumably issued to third-party service providers, most of which are multinational corporations. Finally, the subjects of these orders, Movants, have already been publicly exposed, so there is no basis for claiming that sealing will protect them from unnecessary exposure.

Stripped of these traditional reasons for secrecy, the government's – and the district court's – argument boils down to a claim that all pre-indictment judicial records concerning ongoing investigations should *per se* be sealed. That is at odds

with well-established caselaw from the Supreme Court and this Court establishing that there is a presumption of access to *all* judicial records. *Nixon,* 435 U.S. at 602; *Va. Dep't of State Police*, 386 F.3d at 575. In *Baltimore Sun*, this Court directly rejected this argument, specifically holding that there is a right of access to pre-indictment search warrant affidavits, and vacating the district court's sealing of those documents where the decision was based, as here, solely on a general finding that "the public interest in the investigation of crime outweighed the [media's] interest in access prior to return of the indictments." 886 F.2d at 66. Thus, *Baltimore Sun* makes clear that even pre-indictment, sealing may not be appropriate, and there must be a specific reason to justify sealing the specific documents at issue beyond general law enforcement interests. *Id.*; *see also Va. Dep't of State Police*, 386 F.3d at 579-80 (affirming district court's unsealing of documents related to an ongoing criminal investigation).

### 3.    The District Court Did Not Properly Credit The Public's Significant Interest In Obtaining Access To The Sealed Judicial Orders And Motions.

Even if the government had demonstrated some legitimate reason for keeping the other § 2703 orders sealed, it would not outweigh the strong public interest in having access to these judicial orders and related motions.[18] The district

---

[18] Movants have standing to assert the public's right of access to the sealed documents. *See Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167-68 (3d Cir. 1993).

court improperly relegated these interests to one sentence, *see* JA-281, and failed to weigh them properly against the government's interests.

As discussed earlier, the presumption of access to judicial records stems from the public's interest in serving as a "watchful eye" over the operation of government agencies and the courts, and in ensuring that our judicial system is fair, unbiased, trustworthy, and reaches the right results. *See, e.g.*, *Nixon,* 435 U.S. at 598; *Moussaoui*, 65 F. App'x at 885. That the documents at issue here are judicial orders—the foundation of our judicial system—only heightens the need for openness. *See, e.g.*, *Mentzos*, 462 F.3d at 843 n.4; *Pepsico*, 46 F.3d at 31; *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d at 891; *see supra* at 21-28.

The interest in openness is especially acute here because these specific judicial orders concern a matter of national importance—the ongoing debate about WikiLeaks' publications. The investigation of WikiLeaks has sparked a robust debate involving issues of national security, government secrecy, classified information, and the First Amendment.[19] Because of its importance, that debate has included Congressional hearings, proposed legislation, reconsideration of

---

[19] *See, e.g.*, Jack Goldsmith, *Seven Thoughts on Wikileaks*, Lawfare Blog (Dec. 10, 2010, 4:38PM), http://www.lawfareblog.com/2010/12/seven-thoughts-on-wikileaks/; Marc A. Thiessen, *Obama Administration Is Weak in the Face of WikiLeaks*, Wash. Post, Nov. 29, 2010, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2010/11/29/AR2010112902474.html

Executive Branch information security procedures, and even commentary by the President.[20]  Unsealing the other § 2703 orders and motions would contribute greatly to the public's ability to participate meaningfully in this ongoing debate. The public has a right to know about legal steps that the government is taking to address this matter of national concern and how the courts are responding when, as here, there is not an overriding need for secrecy.  Among other things, disclosure would enable the public to reach their own determinations about the appropriateness of the government's actions.

In addition to the significant public interest in this particular investigation, the public also has a substantial interest in knowing about the nature and scope of the government's electronic surveillance of lawful Internet activities.  An increasing percentage of personal and business activities are conducted online each year,[21] resulting in an ever-increasing amount of personal data being stored online

---

[20] *See Espionage Act and the Legal and Constitutional Issues Raised by WikiLeaks: Hearing Before the H. Comm. On the Judiciary*, 111th Cong. (Dec. 16, 2010); *In WikiLeaks' Wake, Administration Tightens Information Security*, OMB Watch, Jan. 11, 2011, http://www.ombwatch.org/node/11452; Obama Calls WikiLeaks' "Deplorable," Reuters, Dec. 11, 2010, *available at* http://www.reuters.com/article/idUSTRE6BA24B20101211.
[21] *See Online Activities, 2000-2009*, Pew Internet & American Life Project, http://pewinternet.org/Static-Pages/Trend-Data/Online-Activities-20002009.aspx (last visited Jan. 19, 2012).

and, thereby, potentially available to law enforcement, using techniques like §2703(d) orders.[22]

Because of these developments, Congress is considering how to update the Electronic Communications Privacy Act, Pub. L. No. 99-508, 100 Stat. 1848 (1986), of which the law at issue here, the Stored Communications Act, constitutes Title II.[23]  To be able to consider intelligently how to strike the balance between civil liberties and law enforcement needs in the digital age, the public and Congress need to know as much as possible about how the government is using its surveillance authorities to monitor lawful Internet communications.  Because the Twitter Order has been voluntarily unsealed, this case presents a rare and valuable opportunity for the public to learn about electronic surveillance orders and the nature and scope of the government's use of them.

Finally, the public has a significant interest in ensuring that individuals' constitutional rights are not unnecessarily infringed and that individuals have an opportunity to seek to protect those rights before they are infringed.  *See, e.g., Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011) ("upholding constitutional rights is in the public interest") (citing *Giovani Carandola, Ltd. v.*

---

[22] *See* Paul Lanois, *Caught in the Clouds: The Web 2.0, Cloud Computing, and Privacy?*, 9 Nw. J. Tech. & Intell. Prop. 29 (2010).

[23] *See, e.g.*, Electronic Communications Privacy Act Amendments Act of 2011, S. 1011, 112th Cong. (2011); *ECPA Reform and the Revolution in Cloud Computing: Hearing Before the Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the H. Comm. on the Judiciary*, 111th Cong. (Sept. 23, 2010).

*Bason*, 303 F.3d 507, 521(4th Cir. 2002)).  Like many members of the public,

Movants use multiple electronic communications services for self-expression,

publication, association, and communication.  The information demanded by the

government will reveal personal, intimate matters about their lives, expressive

activities, and associations.  Because the other orders have been sealed, Movants

have not been able to challenge these other attempts to obtain their private

information.  To the extent any of those orders to other companies have not been

complied with already, Movants need to have them unsealed so that they can

challenge them.  To the extent they have been complied with already, their sealing

prevented Movants from taking steps to defend their constitutional rights, in

violation of this public interest.

The district court erred in not seriously considering these significant

interests in favor of access.  It failed to do so, in part, based on its incorrect belief

that if the government possesses a substantial reason for desiring secrecy, sealing is

appropriate, regardless of the access interests.  *See* JA-281.  That belief belies a

fundamental misunderstanding and undervaluation of the core values underlying

the right of access.  Sealing does not turn on a straight balancing test.  Because of

how valuable openness is to our judicial system, there is a strong presumption in

favor of access, which means the scales start tipped in favor of access.  *See Nixon*,

435 U.S. at 597.  To overcome this presumption, and to tip the scales in the

government's favor, therefore, the government's secrecy interests must not just "outweigh" the interests in access, as the Magistrate and the district court believed, JA-121–22 (Mag. Mem. Op.); JA-280 (Dist. Ct. Mem. Op.), they must "heavily outweigh" them, *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Rushford*, 846 F.2d at 253).

Rather than correct the Magistrate's erroneous understanding of the government's burden, the district court defended it, arguing that there is not a material difference between "outweigh" and "heavily outweigh." JA-280. Not so. By using "outweigh," the court eliminated the presumption of access. The district court therefore erred in concluding that the Magistrate did not use the wrong legal test and in failing to require the government to demonstrate that its interests, if any, heavily outweighed the interests in favor of access.

> **4.    The District Court Erred By Failing To Require An Individualized Sealing Analysis With Respect To Each Document.**

The district court also erred by not requiring the government to meet its burden with respect to each sealed document. This Court has made clear that courts are required to make a specific determination with respect to "each document" sealed or sought to be sealed. *Stone*, 855 F.2d at 181 (noting that because different levels of protection attach to different judicial records, courts "must determine the source of the right of access with respect to each document

sealed" to conduct an accurate sealing analysis); *see also Va. Dep't of State Police*,

386 F.3d at 570 (same).[24]  Despite this caselaw, the district court held that "[t]here

is no need, as Petitioners put it in one pleading, 'to proceed document-by-

document.'"  JA-281 (citation omitted).  That was error.  The court's disregard of

this clear procedural requirement led it to ignore the fact that the Magistrate and

the government completely failed to justify the sealing of the other § 2703 orders

and motions.

Instead of considering whether the government satisfied its burden for each

document, the Magistrate broadly concluded that all of the documents on the 10-gj-

3793 docket should remain sealed because there is no right of access to any

documents related to an ongoing investigation.  JA-120, JA-122.  As discussed

earlier, that is not the law.  *See Va. Dep't of State Police*, 386 F.3d at 575, 579;

*Baltimore Sun*, 886 F.2d at 66.  The Magistrate's failure to proceed document-by-

document, and the district court's subsequent embrace of that approach, has led to

the untenable result that even though the government has agreed that its motion to

---

[24] This Court's decision in *ACLU v. Holder*, No. 09-2086, 2011 WL 1108252 (4th Cir. 2011), is not to the contrary.  In that case, the panel majority held, over a dissent, that it was not necessary to conduct an individualized sealing analysis for each sealed document because the complaint presented only a facial challenge.  *Id.* at *8-9.  Where, as here, there is an as-applied challenge to specific sealing decisions, the Court recognized that individualized assessments would be necessary.  *Id*.

unseal the Twitter Order should not be sealed, JA-65, that document still remains sealed.

One of the reasons document-by-document analysis is necessary is to ensure that sealing orders are no broader than necessary. What happened here is a perfect example of that problem. Because the Magistrate did not even analyze whether sealing was appropriate for the other § 2703 orders, and instead lumped them together with the sealing of the § 2703 affidavits and applications, these judicial orders and motions were sealed unnecessarily, despite the fact that they, unlike the affidavits and applications, do not contain any sensitive information that might arguably harm the investigation if disclosed. The district court repeated this error, focusing exclusively on the information contained in the application and affidavits, *see, e.g.*, JA-276 ("[t]he application submitted for the § 2703 order contains sensitive information"); JA-276–77 ("Based on a thorough review of the affidavits…"), and ignoring the differences between the information contained in the affidavits and the § 2703 orders, JA-279 (stating that "[f]or the reasons outlined above"—concerning the affidavits and applications—"the government's interest in secrecy outweigh the interests favoring disclosure). That was error, and it led the district court to seal these other § 2703 orders and motions unnecessarily.

**5.   The District Court Failed To Consider Alternatives To Sealing Or To Explain Why They Were Not Sufficient.**

The district court also erred by failing to consider alternatives to complete sealing and/or to explain why such alternatives were not possible.  Because the right to access is such a fundamental right, courts must first "consider less drastic alternatives to sealing," and documents cannot be sealed in their entirety if it is possible to accommodate the government's interests by redacting specific information, even in pre-indictment proceedings.  *Stone*, 855 F.2d at 181; *see also Baltimore Sun*, 886 F.2d at 66 (holding that the judicial officer "must consider alternatives to sealing the documents," which "ordinarily involves disclosing some of the documents or giving access to a redacted version").  If a court decides that the alternatives are not sufficient, it is required to state "the reasons for rejecting alternatives."  *Stone*, 855 F.2d at 181 (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).

Thus, even if the government here had shown that the release of certain information in the other § 2703 orders would cause significant harm to its investigation, the appropriate response would have been for that specific, harmful information to be redacted prior to unsealing.  The district court failed to do so.  Nor did it attempt to explain why such redactions were not possible.  Instead, the district court held that doing so was not necessary.  JA-280–81.  That is in direct

violation of long-established Fourth Circuit caselaw. *See. e.g., Baltimore Sun*, 886 F.2d at 66; *Stone*, 855 F.2d at 181; *In re Knight Publ'g Co.*, 743 F.2d at 235.

## III. THE DISTRICT COURT ERRED IN FAILING TO REQUIRE PUBLIC DOCKETING OF THE SEALED JUDICIAL ORDERS AND RELATED DOCUMENTS.

Even if these other judicial orders could be sealed, there is no justification for the district court's refusal to docket them or any other related documents filed with the court.

Public docketing is an essential component of the right of access. This Court has therefore repeatedly made clear that even sealed judicial records must be publicly docketed in a manner that "give[s] the public notice" of each document sealed or sought to be sealed, sufficient to give the public "a reasonable opportunity to challenge" the sealing of each document in advance of the sealing. *Stone*, 855 F.2d at 181-82; *see also Baltimore Sun*, 886 F.2d at 65; *In re Wash. Post Co.*, 807 F.2d at 390; 4th Cir. R. 25(c)(2)(C) (requiring any motion to seal to be placed on the public docket at least five calendar days in advance of a ruling on the motion); E.D. Va. Local Crim. R. 49 (stating that every sealing request must be docketed "in a way that discloses its nature as a motion to seal").

Publicly accessible docket sheets containing entries for each judicial document provide this notice to the public. They serve as an "index" that catalogues the proceedings and as a "publication" that "provides the public and

press with notice of case developments." *United States v. Ochoa-Vasquez,* 428

F.3d 1015, 1029 n. 15 (11th Cir. 2005) (citing *Hartford Courant,* 380 F.3d at 93-

94). Docket sheets allow the public to determine "the status of a case, the actions

of the parties, and the determinations of the judge, without requiring the inspection

of every item in the case file." *Id* at 1029 & n.15. In other words, they enable the

public to keep a "watchful eye" on the operation of the government and the courts,

*Nixon,* 435 U.S. at 598, a role that assumes particular importance when the court is

considering sealing a judicial matter, *Ochoa-Vasquez,* 428 F.3d at 1029 & n.15. In

so doing, they "endow the public and press with the capacity to exercise their

rights guaranteed by the First Amendment," *Hartford Courant*, 380 F.3d at 93, and

ensure that the right to access is not just a theoretical right.

Accordingly, this Court has consistently required public docketing, even for

matters that merit continued sealing, and even for time-sensitive proceedings. *See,*

*e.g.*, *Baltimore Sun*, 886 F.2d at 65; *Stone*, 855 F.2d at 181-82; *In re Wash. Post*

*Co.*, 807 F.2d at 390. Thus, in the case of search warrants, where the requirement

to conduct proceedings "with dispatch to prevent destruction or removal of the

evidence" may necessitate moving quickly before the public can be given an

opportunity to raise objections, the Court has nevertheless adhered to the

requirement of public docketing to provide the public with notice and "an

opportunity . . . to voice objections to the denial of access," holding that such

45

notice "can be given by docketing the order sealing the documents." *Baltimore Sun*, 886 F.2d at 65. That is true even in the context of pre-indictment, investigative documents. *Id*.

The district court nevertheless held that the requested public docketing was not required here, under either the First Amendment or the common law. JA-278, JA-281. That decision cannot be reconciled with the extensive caselaw prohibiting secret dockets and sealed docket sheets, which emphasizes the need for *individual* docket entries for each document filed with or by the court. In *In re State-Record Co., Inc.*, 917 F.2d 124 (4th Cir. 1990), this Court reversed the sealing of docket sheets in two criminal matters, holding that the order requiring such sealing was overbroad and violated the plaintiffs' First Amendment rights. Remarking that "we can not understand how the docket entry sheet could be prejudicial," the Court expressed concern that "harmless" information—the individual docket entries for each event—had "been withheld from the public." *Id.* at 129. Because that harmless information was unnecessarily withheld, the Court held the sealing to be overbroad and in violation of the First Amendment: it "violates one of the cardinal rules that closure orders must be tailored as narrowly as possible." *Id.* As here, in *In re State-Record Co.*, the case number, the name of the assigned judge, and the fact of sealing were already publicly known, but almost all the contents of the docket sheet were entirely sealed. Those publicly known facts were not sufficient

to provide adequate public docketing there.  *See id.* (vacating the district court's

sealing order).  Nor are they sufficient here.

Other circuits have similarly invalidated the use of secret, sealed dockets

that lack any individual docket information.  In *Hartford Courant Co. v.

Pellegrino*, 380 F.3d 83 (2d Cir. 2004), the Second Circuit held that the First

Amendment requires that docket sheets be presumptively open.  "[D]ocket sheets,"

the court explained, "endow the public and press with the capacity to exercise their

rights guaranteed by the First Amendment."  *Id.* at 93.  The "index" and

"information" of which the Second Circuit spoke goes far beyond the existence of

a case and the judge's name, the inclusion of which alone is not sufficient to enable

the exercise of First Amendment rights.

Similarly, the Eleventh Circuit invalidated a federal court's use of a parallel

sealed criminal docketing procedure, explaining that the failure to record certain

individual pretrial events on the public docket was impermissible because it

"completely hid from public view" the occurrence of those events and "effectively

precluded the public and the press from seeking to exercise" their right of access.

*Valenti*, 987 F.2d at 715.

Likewise, in *In re Search Warrant for Secretarial Area Outside the Office of

Thomas Gunn*, 855 F.2d 569 (8th Cir. 1988), the Eighth Circuit held that the

sealing of district court docket sheets in a challenge to the sealing of certain search

warrant affidavits and related materials was "improper." *Id.* at 575. Here, as in

*Gunn*, it is not sufficient simply to indicate that a sealed case exists and to leave the

public guessing whether an order sealing the documents was ever entered or what

other documents may have been filed with a court.

   This Court's numerous cases requiring public docketing generally, including

*Stone*, *Baltimore Sun*, and *In re Washington Post*, also make clear that

individualized docketing is necessary. Although those cases do not expressly

discuss the need to docket each specific document or proceeding, that is an implicit

holding of each case. In those cases, there was already a public docket for at least

a portion of each of the cases. Hence, the issue before the Court was whether there

needed to be public docketing of the specific sealed documents or hearings at

stake. The Court has consistently answered that question in the affirmative. *See*

*Baltimore Sun*, 886 F.2d at 65-66; *Stone*, 855 F.2d at 181-82; *In re Wash. Post Co.*,

807 F.2d at 390.

   One of the reasons that individual docket entries are necessary is that the

unavailability of docket sheets noting the existence of specific documents under

seal "may thwart appellate or collateral review of the underlying sealing

decisions," because "[w]ithout open docket sheets, a reviewing court cannot

ascertain whether judicial sealing orders exist," and therefore may not be able to

review them. *Hartford Courant,* 380 F.3d at 94 (citing Michael Zachary, *Rules 58*

*and 79(a) of the Federal Rules of Civil Procedure: Appellate Jurisdiction and the*

*Separate Judgment and Docket Entry Requirements,* 40 N.Y.L. Sc. L. Rev. 409,

434, 451-52, 454 (1996)).

In addition to this extensive caselaw prohibiting sealed docket sheets, the

Federal Rules of Civil and Criminal Procedure, the rules of this Court and other

courts of appeal and district courts, and Judicial Conference policy all reinforce the

necessity of having a public docket identifying each document filed with or issued

by a court.  Federal Rule of Criminal Procedure 55, for example, provides that

"every court order or judgment," along with the "date of entry," "must" be entered

by the clerk in the public records of the district court's criminal proceedings.

Individual circuit rules similarly reject the use of sealed dockets.  For

example, the Third Circuit has adopted a blanket rule that dockets cannot be secret:

"Because the text of the docket contains procedural information only, Court of

Appeals dockets will not be sealed."  Notice to the Bar, United States Court of

Appeals for the Third Circuit (Nov. 4, 2011).  Similarly, although not adopting a

blanket rule per se, this Court has established several measures to ensure public

dockets.  Thus, the Court's docket is available on the Internet, "even if the district

court docket was sealed."  *See* Mem. on Sealed and Conference Materials, United

States Court of Appeals for the Fourth Circuit (Oct.17, 2011).  Motions to seal

matters in this Court also must be docketed for at least five days before decisions

are rendered to provide notice and an opportunity to challenge the requested sealing. 4th Cir. R. 25(c)(2)(C); 4th Cir. R. 34.3. These rules are similar to the local rule from the Eastern District of Virginia governing the action below. *See* E.D. Va. Local Crim. R. 49 (requiring the docketing of every sealing request).

The Judicial Conference, for its part, has established that redacted docket sheets should be posted even when cases are otherwise sealed. *See* Tim Reagan & George Cort, Fed. Judicial Ctr., *Sealed Cases in Federal Courts* 2 (2009) (discussing recent Judicial Conference policy). Indeed, the Judicial Conference recently adopted a policy that encourages federal courts to limit the instances in which they seal entire civil case files. Judicial Conference Policy on Sealed Cases, Sept. 13, 2011, *available at* http://www.uscourts.gov/uscourts/News/2011/docs/ JudicialConferencePolicyonSealedCivilCases2011.pdf.

Allowing these § 2703-related documents to be exempt from the generally-applicable public docketing requirements would create a secret, nonpublic court system for electronic communications orders. That is contrary to the fundamental principles of our judicial system, and the Court should not permit it. *See CBS, Inc. v. U.S. Dist. Ct.,* 765 F.2d 823, 826 (9th Cir. 1985) (Kennedy, J.) (noting that "a two-tier system, open and closed" erodes public confidence in the accuracy of records, and thus denies the public and press its right to meaningful access).

Rather than creating a public docket with entries identifying any other §

50

2703 orders or related documents, the district court found that the newly-instituted

EC "running list" was sufficient.[25]  JA-278.  With the exception of the docketing of

the Twitter documents in 1:11-ec-00003, which Movants do not challenge,

however, this new "EC" list violates the requirement that every document filed

with the court, including sealed documents, must be publicly docketed.  *Baltimore*

*Sun*, 886 F.2d at 65; *Stone*, 855 F.2d at 181; *In re Wash. Post Co.*, 807 F.2d at 390;

Fed. R. Crim. P. 55; E.D. Va. Local Crim. R. 49.

Indeed, other than with respect to the Twitter Order documents, the EC

running list contains no information aside from the docket number, the date the

docket number was assigned, and the name of the assigned judge.  JA-175–77.

This EC list does not indicate which documents were filed in each matter, whether

the Court granted or denied any request for an order or the sealing request, whether

any motions have been filed challenging the requests or orders, or the date any

such documents were filed.  This EC list does not, therefore, even contain the

information included on the running list referenced by this Court in *Media*

*General*, after which the district court's new EC running list is presumably

---

[25] The term "running list" originally referred to a publicly available hard-copy,
"permanent docket book," in which a tracking number for search warrants and pen
register orders was assigned by the Clerk's Office.  *See Media Gen. Operations,*
*Inc.*, 417 F.3d at 427.  Next to the tracking number, the clerk recorded entries for
each document, such as "Search Warrant" and "Affidavit Under Seal," identifying
each document associated with that tracking number.  *Id.*

modeled. 417 F.3d at 427 (noting that the specific items "Search Warrant" and "Affidavit Under Seal" were individually docketed on the "running list").

Public docketing is particularly important here because absent individualized public docketing, the public will not know whether an entry on the EC list refers to a § 2703 order, a pen register order, a trap and trace order, or some other type of order for which the district court is using the EC list. Nor will the public have any notice of whether the Court has denied any such requests by the government or whether there has been objection by anyone to the orders. As a result, the public will not be able to determine whether it is appropriate to bring a challenge to such sealing, or what legal principles would apply to such a challenge, because different rules may apply to the sealing of different documents. *See, e.g.*, *Baltimore Sun*, 886 F.2d at 65-66 (establishing different principles for sealing of search warrant affidavits).



That delay is not permissible; it "'unduly minimizes, if it does not entirely overlook, the value of 'openness' itself, a value

which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure.'" *In re Application & Affidavit for a Search Warrant*, 923 F.2d at 331.[26]



This scenario demonstrates why this Court has repeatedly held that there must be a public docket, with sufficient information on it to permit the public to have notice of any sealing requests or orders, and to have an actual opportunity to challenge any such requests or orders.

The district court concluded—without explanation—that public docketing of these judicial orders and related documents is inappropriate because, in its view, it

---

[26] For the same reasons, the district court's conclusion that the government should not be required to file an *ex parte* submission to justify continued sealing of these other orders and documents until 180 days after issuance of its November 10 order, JA-222, unduly minimizes these values of openness. Given that these other orders were likely issued in December 2010 or January 2011, the court has essentially permitted their sealing to last, without further review, for approximately sixteen months.

"would allow Petitioners (and many others) to observe the progress of a particular investigation, or to analyze the correspondence between government activity and docketing of sealed orders, or even the investigative methodology in a particular case, permitting inferences about the contents of sealed records." JA-278. There is no support for those assertions, either in fact or logic. The public docketing requested here—entries containing the names and dates of documents filed with the court—will not reveal any sensitive details about the government's investigation, such as who the recipients of the orders are, who the targets of the investigation are, or what information the government is requesting, let alone the contents of sealed records. Where the underlying order remains sealed, this information would not appear on the public docket. Nor would it be possible to draw any connection between a docket entry and a particular investigation, as the district court envisaged, because the docket entry—e.g., "Sealed § 2703 Order"— would be divorced of any context.

Instead, docketing the name and date of each document filed with the court would simply reveal information such as the type of order sought (§ 2703 order, pen register, or other), whether the court granted or denied any request for an order, whether a non-disclosure order was sought and granted or denied, and whether any motions have been filed challenging the requests or orders. That

information is "harmless" to the government, *see In re State-Record*, 917 F.2d at 129, but it is critical to the public.

That this information is harmless is abundantly demonstrated by the ec-3 docket for the Twitter Order. Several of the items on the ec-3 docket are individually identified, including the still-sealed Application and still-sealed motion to unseal, yet no sensitive investigative details are revealed by those entries. *See* JA-175–77. The district court's refusal to require the same docketing for the non-Twitter orders and documents in the same manner cannot be justified on the grounds suggested by the district court.

Moreover, even if the government had a legitimate reason for not wanting these judicial records to be docketed, this Court has made clear that courts must publicly docket all sealed judicial records, regardless of whether public docketing would allegedly affect important government interests. In *In re Washington Post Co.*, 807 F.2d at 383, a case that involved sensitive national security concerns and classified information, the government argued that the ordinary principle of providing public docketing of a motion to seal documents should not be required "where national security interests are at stake," in part because, much as the district court asserts here, "notice of a closure motion alone could lead the news media to guess at the nature of the covert operations involved." *Id.* at 391 & n.8. The Court rejected that argument, holding that the ordinary "procedural requirements . . . are

fully applicable." *Id.* at 392. Put simply, where sealing is at issue, a court does not have "discretion to adapt its procedures to the specific circumstances." *Id.* at 391.

In this respect, § 2703 orders are no different for public docketing purposes than search warrants, which also are issued in the investigative, pre-charge stage of a case, by a judge, upon a specific showing, but which this Court has made clear are judicial records that must be publicly docketed. *Baltimore Sun*, 886 F.2d at 65-66. There is no reason for treating § 2703-related documents any differently for public docketing purposes.[27]

Movants do not seek the adoption of any particular administrative procedure for public docketing. Movants are not, in other words, challenging the use of the EC "running list" mechanism, instead of the use of a normal case docket. Instead, Movants merely request that the Clerk's Office provide sufficient information—through whatever administrative vehicle the Clerk's Office adopts—to give adequate notice to the public of the filing under seal of each judicial record, to provide the public with an opportunity to challenge their sealing. That is what this Court has required, and it is what the First Amendment and common law principles

---

[27] Pen register proceedings—another investigative proceeding—have also historically been docketed on the public running list. *See Media Gen. Operations, Inc.*, 417 F.3d at 427.

of the right of access mandate.[28]

---

[28] The district court attempted to defend its denial of public docketing, in part, by claiming that "the Clerk's [docketing] procedures fall well within the standards adopted by the Judicial Conference on March 17, 2009, which allowed individual courts discretion to include information in excess of the case name and number." JA-278. To the extent the Judicial Conference policy permits courts not to maintain a public docket concerning judicial orders, that policy raises serious constitutional concerns, as public docketing is necessary to preserve First Amendment rights. *See Hartford Courant*, 380 F.3d at 93; *Valenti*, 987 F.2d at 715. In any event, the docketing here is not in compliance with the very policy cited by the district court. That policy provides that sealed matters must be publicly accessible on the Internet, through ECF/PACER. *See Report of the Proceedings of the Judicial Conference of the United States*, March 17, 2009, at 11, *available at* http://www.uscourts.gov/FederalCourts/JudicialConference/Proceedings/Proceedings.aspx?doc=/uscourts/FederalCourts/judconf/proceedings/2009-03.pdf. None of the cases on the EC list are publicly accessible on PACER, however.

## CONCLUSION

For the foregoing reasons, the Court should vacate the district court's order, unseal the other § 2703 orders and motions, and require the district court to maintain a public docket concerning these other judicial orders and related documents.

## REQUEST FOR ORAL ARGUMENT

Oral argument is requested.

Respectfully submitted,

Dated: January 20, 2012

By: /s/ Aden J. Fine_____
Aden J. Fine
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212.549.2500
Facsimile: 212.549.2651
Email: afine@aclu.org

Rebecca K. Glenberg
AMERICAN CIVIL LIBERTIES UNION
    OF VIRGINIA FOUNDATION, INC.
530 E. Main Street, Suite 310
Richmond, VA 23219
Telephone: 804.644.8080
Facsimile: 804.649.2733
Email: rglenberg@acluva.org

Cindy A. Cohn
Lee Tien
Marcia Hofmann
ELECTRONIC FRONTIER
FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: 415.43  6.9333 x108
Facsimile: 415    436.9993
Email: cindy@eff.org
Email: tien@eff.org
Email: marcia@eff.org

**Attorneys for BIRGITTA JONSDOTTIR**

Dated: January 20, 2012                     By:  /s/ Rachael E. Meny_____
John W. Keker
Rachael E. Meny
Steven P. Ragland
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415.391.5400
Facsimile: 415.397.7188
Email: jkeker@kvn.com
Email: rmeny@kvn.com
Email: sragland@kvn.com

John K. Zwerling
Stuart Sears
ZWERLING, LEIBIG & MOSELEY, P.C.
108 North Alfred Street
Alexandria, VA 22314
Telephone: 703.684.8000
Facsimile: 703.684.9700
Email: JZ@Zwerling.com
Email:        Stuart@Zwerling.com

**Attorneys for JACOB APPELBAUM**

Dated:  January 20, 2012          By:  /s/ John D. Cline_____
                                  John D. Cline
                                  LAW OFFICE OF JOHN D. CLINE
                                  235 Montgomery Street, Suite 1070
                                  San Francisco, CA 94104
                                  Telephone: 415.322.8319
                                  Facsimile: 415.524.8265
                                  Email: cline@johndclinelaw.com

                                  K.C. Maxwell
                                  LAW OFFICE OF K.C. MAXWELL
                                  235 Montgomery Street, Suite 1070
                                  San Francisco, CA 94104
                                  Telephone: 415.322.8817
                                  Facsimile: 415.888.2372
                                  Email: kcm@kcmaxlaw.com

                                  Nina J. Ginsberg
                                  DIMUROGINSBERG, P.C.
                                  908 King Street, Suite 200
                                  Alexandria, VA 22314
                                  Telephone: 703.684.4333
                                  Facsimile: 703.548.3181
                                  Email: nginsberg@dimuro.com

                                  **Attorneys for ROP GONGGRIJP**

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of
   Appellate Procedure 32(a) because it contains 13,854 words, excluding the
   parts of the brief exempted by Federal Rule of Appellate Procedure
   32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of
   Appellate Procedure 32(a)(5) and the type-style requirements of Federal
   Rule of Appellate Procedure 32(a)(6) because it has been prepared in a
   proportionally spaced typeface using Microsoft Word 2010 in 14-point
   Times New Roman.

/s/ Aden J. Fine

Aden J. Fine

January 20, 2012

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of January, 2012, the foregoing

Public Brief for Movants-Appellants was filed electronically through the Court's

CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system.


 /s/ Aden J. Fine
_____

Aden J. Fine