UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

No. 11-5151

————————————

IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR AN
ORDER PURSUANT TO 18 U.S.C. SECTION 2703(d)

————————————

UNITED  STATES  OF  AMERICA,
*Plaintiff-Appellee,*

v.

JACOB APPELBAUM; ROP GONGGRIJP; BIRGITTA JONSDOTTIR,
*Defendants-Appellants,*
and
TWITTER, INCORPORATED,
*Defendant.*

————————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Liam O'Grady, District Judge*

————————————

BRIEF  OF  THE  UNITED  STATES

————————————

Neil H. MacBride                          Lindsay Kelly
United States Attorney                    Andrew Peterson
                                          Assistant United States Attorneys
                                          2100 Jamieson Avenue
                                          Alexandria, Virginia 22314
                                          (703) 299-3700
*Attorneys for the United States of America*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      I.      THE DISTRICT COURT PROPERLY APPLIED A "CLEARLY
             ERRONEOUS OR CONTRARY TO LAW" STANDARD OF
             REVIEW TO THE MAGISTRATE JUDGE'S SEALING
             DECISION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      II.      THERE IS NO JUSTIFICATION FOR UNSEALING OTHER
             LAWFUL ORDERS ISSUED AS PART OF THE UNITED
             STATES' ONGOING CRIMINAL INVESTIGATION . . . . . . . . 25

             A.     There is No Public Right of Access to
                    Section 2703(d) Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

             B.     There is No First Amendment Right of Access to Section
                    2703(d) Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

             C.     Any Common Law Presumption of Access to Section 2703(d)
                    Orders is Outweighed by Competing Interests . . . . . . . . . . . . 38

# TABLE OF CONTENTS
## (Continued)

D.    The District Court Was Not Required to Engage in a Document-By-Document Sealing Analysis . . . . . . . . . . . . . . 45

E.    Redaction Will Not Adequately Protect the Integrity of the Criminal Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

III.    THE EASTERN DISTRICT OF VIRGINIA'S PUBLIC DOCKETING OF SECTION 2703(d) ORDERS IS LEGALLY SUFFICIENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

A.    Public Docketing Method . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

B.    There is No Right to Public Docketing of Investigative Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

C.    The Eastern District of Virginia's System for Publicly Docketing Section 2703(d) Orders is Legally Sufficient . . . . 53

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

ii

# TABLE OF AUTHORITIES

**CASES**                                                                  **Page**

*Alexander v. Boyd*, 113 F.3d 1373 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 21

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980) . . . . . . . . . . . . . . . . . . 5

*Aluminum Company of America (ALCOA) v. EPA*,
    663 F.2d 499 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Anderson v. Cryovac, Inc.*, 805 F.2d 1 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . 25

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) . . . . . . . . . . . . . . *passim*

*Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953) . . . . . . . . . . . . . . . 5, 21

*Bloate v. United States*, - U.S. -, 130 S. Ct. 1345 (2010) . . . . . . . . . . . . . . . . . . 40

*Brooks v. Arthur*, 626 F.3d 194 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brown v. United States*, 359 U.S. 41 (1959) . . . . . . . . . . . . . . . . . . . . . . . . 29, 52

*Catlin v. United States*, 324 U.S. 229 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 30

*Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211 (1979) . . . . . . . . . . . . *passim*

*Harris v. United States*, 382 U.S. 162 (1965) . . . . . . . . . . . . . . . . . . . . . . . . 29, 52

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004). . . . . . . . . . . . . 52

*Horton v. West*, 2011 WL 124602 (E.D.Va. Jan. 13, 2011) . . . . . . . . . . . . . . . . 18

*Illinois v. Abbott & Assoc., Inc.*, 460 U.S. 557 (1983) . . . . . . . . . . . . . . . . . 27-28

*In re § 2703(d),* 787 F. Supp. 2d 430 (E.D. Va. 2011) . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES
## (Continued)

**CASES**                                                 **Page**

*In re Application and Affidavit for a Search Warrant*,
    923 F.2d 324 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 41-42

*In re Application for the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*,
    - F. Supp. 2d -, 2011 WL 5508991 (E.D.Va. 2011) . . . . . . . . . . . . . . . . . . 12

*In re Application of the N.Y. Times Co. to Unseal Wiretap & Search Warrant
    Materials*, 577 F.3d 401 (2nd Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Blackwater Security Consulting LLC*, 460 F.3d 576 (4th Cir. 2006) . . . . . . 20

*In re Braxton*, 258 F.3d 250 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Charlotte Observer,* 882 F.2d 850 (4th Cir. 1989) . . . . . . . . . . . . . . . . . 4, 43

*In re Grand Jury Investigation of Cuisinarts, Inc.*,
    665 F.2d 24 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir. 1984) . . . . . . . . . . . 38-39, 47

*In re Macon Telegraph Pub. Co.*, 900 F. Supp. 489 (M.D. Ga. 1995) . . . . . . . . . 34

*In re Motion of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998) . . . . . . . . *passim*

*In re Providence Journal*, 293 F.3d 1 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 21

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 29, 50

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*,
    562 F. Supp. 2d 876 (S.D. Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

# TABLE OF AUTHORITIES
## (Continued)

**CASES**                                                      **Page**

*In re State-Record Co.*, 917 F.2d 124 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . 46, 52

*In re Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986) . . . . . . . . . . . . . . . . 4, 31

*Jones v. Angelone*, 94 F.3d 900 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Kerr v. United States Dist. Ct.*, 426 U.S. 394 (1976) . . . . . . . . . . . . . . . . . . . . 5, 21

*Media General Operations, Inc. v. Buchanan,*
    417 F.3d 424 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Morrison v. Olson*, 487 U.S. 654 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) . . . . . . . . . 25, 38-39

*Platt v. Minnesota Mining & Mfgr. Co.*, 376 U.S. 240 (1964) . . . . . . . . . . . . . . 4-5

*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) . . . . . . . . . . . 13, 27, 31

*Reich v. Nat'l Eng'g & Contracting Co.*, 13 F.3d 93 (4th Cir. 1993) . . . . . . . . . . 24

*Rushford v. New Yorker Magazine*, 846 F.2d 249 (4th Cir. 1988) . . . . . . . . . . . . 39

*Sto Corp. v. Lancaster Homes, Inc.*, 11 Fed. Appx. 182 (4th Cir. 2001) . . . . . . . 24

*Stone v. University of Maryland Medical System Co.*,
    855 F.2d 178 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 47

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) . . . . . . . *passim*

*United States v. Amodeo*, 44 F.3d 141 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . 25

*United States v. Blauvelt*, 638 F.3d 281 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES
## (Continued)

**CASES**                                                                **Page**

*United States v. Dionisio*, 410 U.S. 1 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Gonzalez*, 150 F.3d 1246 (10th Cir. 1998) . . . . . . . . . . . . . . . . 31

*United States v. McDougal*, 559 F.3d 837 (8th Cir. 2009) . . . . . . . . . . . . . . . . . 26

*United States v. McVeigh*, 918 F. Supp. 1452 (W.D. Okla. 1996) . . . . . . . . . . . 32

*United States v. Moussaoui*, 333 F.3d 509 (4th Cir. 2003) . . . . . . . . . . . . . . *passim*

*United States v. Penrod*, 609 F.2d 1092 (4th Cir. 1979) . . . . . . . . . . . . . . . . . . 44

*United States v. Shriver*, 645 F.2d 221 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Smith*, 123 F.3d 140 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. United States District Court*, 407 U.S. 297 (1972) . . . . . . . . . . . 33

*United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . 52

*Virginia Dep't of State Police v. Washington Post*,
    386 F.3d 567 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Will v. United States* , 389 U.S. 90 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATUTES**                                                             **Page**

18 U.S.C. § 2518 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 2703(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES
## (Continued)

**STATUTES**                                                    **Page**

18 U.S.C. § 2703(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 2703(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 2703(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 2703(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2705(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 2707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2711(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 636(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. § 636(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**COURT RULES**                                                 **Page**

Eastern District of Virginia Local Criminal Rule 49 . . . . . . . . . . . . . . . . . . . . 51, 54

Eastern District of Virginia Local Criminal Rule 49(B) . . . . . . . . . . . . . . . *passim*

Eastern District of Virginia Local Criminal Rule 57.1(B) . . . . . . . . . . . . . . 28-29

Federal Rule of Appellate Procedure 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# TABLE OF AUTHORITIES
## (Continued)

**COURT RULES**                                                    **Page**

Federal Rule of Criminal Procedure 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Federal Rule of Criminal Procedure 6(e)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Criminal Procedure 6(e)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rule of Criminal Procedure 41(f)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . 30

Federal Rule of Criminal Procedure 49.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Federal Rule of Criminal Procedure 49.1(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . 51

Federal Rule of Criminal Procedure 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50-51

Federal Rule of Criminal Procedure 59(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Federal Rule of Evidence 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States Constitution, Amendment V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**OTHER SOURCES**                                                  **Page**

U.S. Dep't of Justice Computer Crime & Intellectual Property Section,
*Searching and Seizing Computers and Electronic Evidence Manual*, at
Appendix B, available at: http://www.justice.gov/criminal/cybercrime
/ssmanual/06ssma.html (visited Feb. 8, 2012) . . . . . . . . . . . . . . . . . . . . . . . 48

Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508,
100 Stat. 1848 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

# TABLE OF AUTHORITIES
## (Continued)

**OTHER SOURCES**                                                            **Page**

Peter Beaumont, "WikiLeaks demands Google and Facebook unseal US subpoenas" *The Guardian*, Jan. 8, 2011, available at: http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google -facebook-us-subpoenas (visited Mar. 1, 2012) . . . . . . . . . . . . . . . . . . . . . . 11

Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321(1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Report of the Proceedings of the Judicial Conference of the United States (Mar. 17, 2009), available at: http://www.uscourts.gov/FederalCourts/Judicial Conference/Proceedings/Proceedings.aspx?doc=/uscourts/FederalCourts/ judconf/proceedings/2009-03.pdf (visited Feb. 27, 2012) . . . . . . . . . . . . 56

Tim Reagan and George Cort, *Sealed Cases in Federal Courts* 21-22 (Federal Judicial Center 2009), available at: http://www.fjc.gov/public/pdf.nsf /lookup/sealcafc.pdf/$file/sealcafc.pdf (visited Feb. 29, 2012) . . . 29, 50-51

"Tweet" of Jacob Appelbaum @ioerror (Jan. 7, 2011), available at: http://twitter.com/#!/ioerror/status/ 23545458433458177 (visited Feb. 27, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 11-5151

_____

IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR AN
ORDER PURSUANT TO 18 U.S.C. SECTION 2703(d)

_____

UNITED  STATES  OF  AMERICA,
*Plaintiff-Appellee,*

v.

JACOB APPELBAUM; ROP GONGGRIJP; BIRGITTA JONSDOTTIR,
*Defendants-Appellants,*
and
TWITTER, INCORPORATED,
*Defendant.*

_____

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Liam O'Grady, District Judge*

_____

BRIEF  OF  THE  UNITED  STATES

_____

## JURISDICTIONAL STATEMENT

Appellants, who are subscribers to electronic services provided by Twitter,

Inc. ("Twitter"), initiated litigation in the United States District Court for the

Eastern District of Virginia after receiving notification of an order issued by

United States Magistrate Judge Theresa C. Buchanan pursuant to 18 U.S.C. §

2703(d). The magistrate judge had jurisdiction to issue the order pursuant to 28

U.S.C. § 636(b)(3). *See also* 18 U.S.C. § 2711(3)(A) (defining "court of

competent jurisdiction" to include "a magistrate judge"). The order previously

issued by the magistrate judge directed Twitter to produce to the United States

certain non-content records relating to five subscribers (the "Twitter Order") as

part of an ongoing criminal investigation. In their Motion for Unsealing of Sealed

Court Records (Dkt. 3), appellants, who were three of the five subscribers named

in the Twitter Order (the "Subscribers"), sought not only to unseal and publicly

docket all documents related to the Twitter Order, but also moved to unseal and

publicly docket any other Section 2703(d) orders pertaining to them that may have

been issued as part of the government's investigation. The magistrate judge

granted the Subscribers' unsealing motion in part and denied it in part.

    The Subscribers filed objections with United States District Judge Liam

O'Grady. The district court denied the Subscribers' objections on November 10,

2011, and the Subscribers filed a notice of appeal on November 23, 2011.

    In their brief on appeal, the Subscribers assert, without citing any authority,

that the "district court had jurisdiction pursuant to 28 U.S.C. § 1331." Brief at 1.

Section 1331 provides that federal district courts "shall have original jurisdiction of

all civil actions arising under the Constitution, laws, or treaties of the United

States." But there is no basis for treating the United States' request for a court order under Section 2703(d) as a civil action which the Subscribers may join. Not only is Section 2703(d) a provision that allows the government to conduct criminal investigations, but also, 18 U.S.C. § 2703(e) specifically rejects even a civil cause of action against providers for complying with a court order under the chapter, let alone the United States for requesting the sealing of such a court order. Section 2703 contains no other language suggesting that it creates a "civil action" within the meaning of 28 U.S.C. § 1331. Moreover, a specific, limited civil action is expressly provided in 18 U.S.C. § 2707, but nothing in Section 2707 authorizes the relief the Subscribers seek here.

The Subscribers' claim that the United States' request for an order under Section 2703(d) is a civil action that they may join is unsupported by the statutory text and by the case law. It follows that this appeal cannot be treated as one from a final judgment in a civil case and hence falling under the jurisdictional grant in 28 U.S.C. § 1291. The Subscribers are not aided by their citation of *Catlin v. United States*, 324 U.S. 229, 233 (1945), a case involving a final judgment in a condemnation action. The rulings challenged on appeal here bear no resemblance to a final judgment in a condemnation action.[1]

---

[1] This Court has held that it has jurisdiction under 28 U.S.C. § 1291 to hear United States appeals of rulings denying application by the United States for

3

On appeal, the Subscribers have abandoned their claims of individualized harm from the Twitter Order (which the lower courts held they lacked standing to pursue, *see* JA 150, 243, 258, 270) and rely solely on a public right of access to Section 2703(d) orders. Thus, the Subscribers seek to appeal what amounts to a discovery dispute arising from Section 2703(d) order.

Where the public has sought to challenge a sealing order, this Court has permitted an appeal through a petition for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, and Federal Rule of Appellate Procedure 21. *See*, *e.g.*, *In re Charlotte Observer*, 882 F.2d 850, 852 (4th Cir. 1989) ("We have jurisdiction under the All-Writs Act and Rule 21 of the Fed. R. App. P. to review the sealing and closure orders at issue."); *In re Washington Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986) (same).

But courts have established stringent standards that a petitioner must meet to obtain a writ of mandamus. "[W]rits of mandamus are to be issued only in extraordinary circumstances. . . ." *Id.* at 393 (citing *Platt v. Minnesota Mining &*

---

investigative orders. *See In re Application of the United States*, 563 F.2d 637, 641 (4th Cir. 1977) (denying Title III order under 18 U.S.C. § 2518); *United States v. Shriver*, 645 F.2d 221, 222 (4th Cir. 1981) ("We conclude that denial of the warrant application was a final appealable order within the meaning of 28 U.S.C. § 1291."). But this case - where the Subscribers are not appealing the denial or granting of an order under Section 2703(d), but are seeking to unseal Section 2703(d) orders already obtained by the United States - is easily distinguishable.

*Mfgr. Co.*, 376 U.S. 240, 245 (1964)).  In denying the United States' request for mandamus to prevent depositions of terrorists captured after the 9/11 attacks, this Court observed that mandamus is "a 'drastic' remedy, 'to be invoked only in extraordinary situations.'" *United States v. Moussaoui*, 333 F.3d 509, 516 (4th Cir. 2003) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam)).  "[O]nly exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." *Id.* (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)).

At least two requirements must be satisfied as a precondition for obtaining relief under mandamus.  First, "the party seeking the issuance of the writ [must] have no other adequate means to attain the relief he desires."  *Id.* at 517 (quoting *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 403 (1976)).  Second, "the petitioner bears 'the burden of showing that [his] right to issuance of the writ is clear and indisputable.'" *Id.* (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953)).  *See also In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001) (listing five-part test for mandamus and requiring (1) a "clear and indisputable right to the relief sought"; (2) a "clear duty"; (3) that the act requested was "an official act or duty"; (4) "no other adequate means to attain the relief"; and (5) "issuance of the writ will effect right and justice").

5

As explained more fully below, the Subscribers fail to meet these stringent requirements.  Most significantly, in making their novel claims, they fail to show *any* right to relief, much less a clear and indisputable right to relief.

## STATEMENT OF THE ISSUES

1.    Whether the district court improperly applied a "clearly erroneous or contrary to law" standard of review to the magistrate judge's sealing order and, if so, whether that error was harmless because the district court also undertook a *de novo* review.

2.    Whether the district court abused its discretion in holding that the United States' decision to move to unseal the Twitter Order did not mandate unsealing of any other Section 2703(d) orders pertaining to the Subscribers that may have been issued in an ongoing criminal investigation, where there is no First Amendment right of access to such orders and any common law presumption of access is outweighed by competing interests.

3.    Whether the Eastern District of Virginia's method for publicly docketing orders issued pursuant to 18 U.S.C. § 2703 violates a purported public right of access to full information regarding an ongoing criminal investigation.

## STATEMENT OF THE CASE

As part of an ongoing criminal investigation, Judge Buchanan issued an under seal order pursuant to 18 U.S.C. § 2703(d) directing Twitter to produce to

6

the United States certain non-content business records related to five Subscribers, and prohibiting Twitter from informing the subscribers of the existence of the Twitter Order pursuant to 18 U.S.C. § 2705(b).  Thereafter, the United States made a strategic decision to move to unseal the Twitter Order to enable Twitter to disclose the existence of the Twitter Order to the affected subscribers.  After learning of the existence of the Twitter Order, the Subscribers promptly moved the magistrate judge to, *inter alia*, unseal and publicly docket all documents related to the Twitter Order, and unseal and publicly docket all documents related to any other Section 2703(d) orders that pertain to the Subscribers.[2]

The magistrate judge granted the Subscribers' motion to unseal in part - with respect to all pleadings filed in litigation over the Twitter Order - and denied it in part - with respect to the application for the Twitter Order and documents related to any other Section 2703(d) orders that may have been issued as part of the ongoing criminal investigation.  With respect to public docketing, the magistrate judge directed the Clerk's Office to create a new "ec" docket, specific to Section 2703(d) orders and pen registers, which informs the public - at a minimum - of the docket

---

[2] Despite the Subscribers' claims that, since at least January 2011, they have "reasonably believe[d]"that four other docket numbers pertain to Section 2703(d) orders involving them, Brief at 10, the Subscribers have filed no motions below to unseal those purported orders.  Given this procedural posture, it is doubtful whether "other Section 2703(d) orders" are even properly before this Court on appeal.

number, the date the docket number was assigned, the judge it was assigned to, and

whether the order was filed under seal.  The Subscribers filed objections with the

district court, which denied the objections.  Although styled as a direct appeal, the

Subscribers have effectively petitioned this Court for a writ of mandamus directing

the district court to unseal all other Section 2703(d) orders pertaining to the

Subscribers, and to order document-by-document public docketing of all

documents relating to such Section 2703(d) orders.

## STATEMENT OF FACTS

### I.     BACKGROUND

In May 2010, United States Army Private First Class ("PFC") Bradley E.

Manning was arrested at Forward Operating Base Hammer in Iraq, on accusations

that he was involved in the largest unauthorized release of classified documents in

United States history.  PFC Manning was allegedly assisted in these illegal acts by

associates of the website WikiLeaks.org.

On December 14, 2010, as part of an ongoing criminal investigation into this

unauthorized release of classified information, the magistrate judge issued a

Section 2703(d) order directing Twitter to disclose certain non-content business

records pertaining to the Subscribers and two other subscribers.[3] Specifically, the

---

[3] The other subscribers, PFC Manning and Julian Assange, the founder of
WikiLeaks, did not challenge the Twitter Order or participate in this litigation.

Twitter Order directed Twitter to provide usernames, contact information, connection records, dates and types of services provided, payment information, to/from e-mail addresses and source/destination IP addresses for all communications between November 1, 2009, and December 14, 2010. JA 21. In the Twitter Order, the Court found that disclosure of the application or the Twitter Order to any person would seriously jeopardize an ongoing criminal investigation. JA 19. The Court ordered that the application and Twitter Order be sealed until further order of the Court, and prohibited Twitter from notifying the affected subscribers of the existence of the Twitter Order. JA 20.

Thereafter, the United States made a strategic decision to move to unseal the Twitter Order and allow Twitter to inform the affected subscribers of the existence of the Twitter Order. On January 5, 2011, upon the United States' motion, the magistrate judge unsealed the Twitter Order and authorized Twitter to disclose the Twitter Order to the five affected subscribers. JA 23. The January 5, 2011, unsealing order stated that "in all other respects," the Twitter Order remained in effect. *Id.* After Twitter disclosed the Twitter Order to the five affected subscribers, unknown persons posted the Twitter Order on the Internet.

Over the next week, the United States had discussions with the Subscribers, and ultimately agreed to narrow the time period of the request and forgo its request for financial information. Notwithstanding, on January 26, 2011, the Subscribers

filed motions, *inter alia*, requesting that the magistrate judge vacate the Twitter Order and unseal all documents related to the Twitter Order and any other Section 2703(d) orders pertaining to the Subscribers.  n February 9, 2011, after briefing was concluded, the magistrate judge issued a *sua sponte* order directing the parties to file supplemental briefs addressing on a document-by-document basis which pleadings relating to the Twitter Order should remain sealed.  JA 59.

On February 15, 2011, the magistrate judge held a public hearing on the Subscribers' motions and the supplemental briefing on sealing.  On March 11, 2011, the magistrate judge issued a memorandum opinion and order addressing the Subscribers' motions (the "March 11 Order").  *See In re § 2703(d)*, 787 F. Supp. 2d 430 (E.D.Va. 2011).  The March 11 Order denied the Subscribers' motion to vacate the Twitter Order, granted the Subscribers' motion to unseal pleadings filed during litigation over the Twitter Order, and denied the Subscribers' motion to unseal the application in support of the Twitter Order and any documents related to other Section 2703(d) orders pertaining to the Subscribers.[4]  JA 120-23, 125.

_____

[4] On appeal, the Subscribers purport to seek other unspecified "motions" related to Section 2703(d) orders.  Brief at 14.  It is unclear what they refer to.  As explained *infra* at 18, there are generally no motions filed with an application for a Section 2703(d) order.   Nor would it be necessary to unseal motions or orders to seal, to the extent they exist. *See Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989) ("If appropriate, the government's submission and the officer's reason for sealing the documents can be filed under seal.")

Citing this Court's precedent, the magistrate judge explained that "in the pre-indictment phase, law enforcement agencies must be able to investigate crime without the details of the investigation being released to the public in a manner that compromises the investigation." *Id.* The magistrate judge further held that, even if there was a common law presumption of access to Section 2703(d) orders, this presumption was overcome here by the United States' competing interest in secrecy. JA 122. The magistrate judge found "unconvincing" the Subscribers' claims that "publicity surrounding the Twitter Order has rendered moot the traditional reasons for secrecy"[5] and noted that "[t]he sealed documents at issue set forth sensitive nonpublic facts, including the identity of targets and witnesses in an ongoing criminal investigation." *Id.* The magistrate judge rejected the Subscribers' claim of a First Amendment right of access to Section 2703(d) orders, finding "no history of openness for documents related to an ongoing criminal

---

[5] After Twitter was authorized to disclose the Twitter Order to the five affected subscribers, unknown persons posted the Twitter Order on the Internet. Intense public scrutiny of the United States' investigation into WikiLeaks resulted, including calls by one of the Subscribers and various media outlets for potential government witnesses to identify themselves. *See*, *e.g.*, Peter Beaumont, "Wikileaks demands Google and Facebook unseal US subpoenas," *The Guardian*, Jan. 8, 2011, available at: http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas (visited Mar. 1, 2012). As the district court recognized, it would "create perverse incentives" if "a party could leak a controversial sealed document to the press, then point to the ensuing publicity as evidence that further sealing is unnecessary." JA 279.

11

investigation." JA 123. The magistrate judge deferred ruling on the Subscribers'

request for public docketing of all Section 2703(d) orders pertaining to them. *Id.*

The Subscribers filed objections to the March 11 Order with the district court.

On May 4, 2011 (the "May 4 Order"), the magistrate judge granted (at least

in part) the Subscribers' request for public docketing when she ordered documents

related to the Twitter Order assigned to the newly created "ec" docket, case

number 1:11-ec-3. JA 167. The magistrate judge directed that docket 1:11-ec-3 be

recorded "on the running list in the usual manner" and ordered all documents to

remain sealed. *Id.* On June 1, 2011 (the "June 1 Order"), the magistrate judge

explained that the running list, which "shows at a minimum all assigned case

numbers other than grand jury cases, and whether a particular case is under seal . . .

satisfies the public's right to know that a particular case exists and has been

sealed." JA 181. Specifically, the running list informs the public of the docket

number, the date the docket number was assigned, the judge it was assigned to, and

whether the order was filed under seal. JA 278. The Subscribers promptly filed

objections to the May 4 Order and the June 1 Order with the district court.

On November 10, 2011, the district court issued a 60-page memorandum

opinion overruling the Subscribers' objections. *See In re Application of the U.S.*

*for an Order Pursuant to 18 U.S.C. § 2703(d)*, – F. Supp. 2d –, 2011 WL 5508991

(E.D.Va. 2011). *First*, the district court performed a thorough analysis as to the

12

proper standard of review, and determined that the "clearly erroneous or contrary

to law standard applied."  JA 236-37.  However, the district court "also conducted

a *de novo* review and f[ound] that Magistrate Judge Buchanan's findings and

orders survive the more demanding scrutiny."  JA 231 n.7.

*Second*, the district court rejected a First Amendment right of access to the

Twitter Order application and other Section 2703(d) orders pertaining to the

Subscribers, finding this Court's holding in *Goetz*, 886 F.2d at 64, "dispositive."

JA 276.  Specifically, the district court noted that "procedures for obtaining a §

2703 order are modeled after search warrant procedures, such as those at issue in

*Goetz*"; the district court also rejected the Subscribers' minimization of the risk

disclosure would have on potential destruction of evidence, noting that "electronic

evidence may be more prone to destruction or removal than physical evidence" and

that "[e]ven if Twitter has already preserved information sought by the Twitter

Order, others may be able to destroy other sensitive information not under

Twitter's control."  JA 277.  The district court found "unpersuasive" the

Subscribers' argument that "routine disclosure of § 2703 activities would improve

the functioning of the judicial system," quoting the Supreme Court in *Press-

Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) ("*Press-Enterprise II*"):

"Although many governmental processes operate best under public scrutiny, it

13

takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly."  JA 277.

*Third*, the district court found any common law presumption of access to the requested materials was outweighed by the competing interest in continued sealing. JA 278-79.  The district court found that the magistrate judge correctly applied this Court's standards and found her stated reasons for sealing persuasive.  JA 279-80. The district court rejected the Subscribers' claim that the magistrate judge was required to prepare an order detailing her document-by-document reasoning for sealing, explaining that *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 431 (4th Cir. 2005), held to the contrary.  JA 281.  The district court also noted that the Subscribers' position "would create perverse incentives" in that "a party could leak a controversial sealed document to the press, then point to the ensuing publicity as evidence that further sealing is unnecessary."  JA 279.

*Fourth*, with respect to document-by-document public docketing, the district court "examined the Clerk's docketing procedures thoroughly" and found them acceptable under the Constitution and the common law.  JA 278; JA 281.  The district court noted that the "ec" docket provides the public with information "showing that a particular docket is a criminal case, the date of assignment, the presiding judge, the fact that it is under seal, and other information."  JA 278.  The district court noted that more detailed docketing - such as the exact type of order

14

issued or the date of issuance - would allow the Subscribers "(and many others) to observe the progress of a particular investigation, or to analyze the correspondence between government activity and docketing of sealed orders, or even the investigative methodology in a particular case, permitting inferences about the contents of sealed records," which is unsupported by "history" and "logic." *Id.*

*Background on Investigative Tools*

In investigating a criminal matter involving electronic evidence, federal prosecutors have a number of tools available, depending on the type of information sought and the extent to which the evidence collected during the investigation establishes a tie between targets or witnesses and the requested information. All investigative tools, however, may be kept secret during an ongoing investigation if necessary to protect the investigation.

Grand jury subpoenas are, as the name suggests, issued by the grand jury, when the material sought is of interest in a grand jury investigation. JA 187. Grand jury subpoenas may be used to obtain information that a target or witness has provided to a business, which then keeps that information as part of its business records. For example, grand jury subpoenas may be used to obtain Internet service provider ("ISP")[6] subscriber information such as name, address,

---

[6] ISPs include providers of Internet-based communications such as e-mail, web-based telephone services, and social networking.

billing information, and Internet Protocol ("IP")[7] addresses used.  Pursuant to

Federal Rule of Criminal Procedure 6(e)(6), grand jury subpoenas, records, and

orders are kept under seal "to the extent and as long as necessary" to protect the

investigation; violators may be held in contempt of court, *see* Fed. R. Crim. P.

6(e)(7).  In the Eastern District of Virginia, grand jury subpoenas and materials are

tracked by the United States Attorney's Office, rather than the Clerk's Office, and

are assigned "gj" identification numbers.  JA 187.

Orders issued pursuant to 18 U.S.C. § 2703(c) and (d) enable collection of

additional non-content records or information that a subscriber provides to an ISP.[8]

JA 240.  Such orders may be used to obtain additional non-content information

kept in an ISP's business records, such as to/from e-mail addresses and/or IP

addresses, *see*, *e.g.*, JA 90-92, which can reveal the extent of communications

between and among targets or witnesses as well as whether and when targets or

witnesses were in the same location.[9]  Section 2703(d) orders are issued upon a

---

[7] An IP address is a unique numerical code assigned to a particular Internet connection.  Much like a telephone number, an IP address is tied to a particular geographic location.

[8] By statute, Section 2703(d) orders may be issued to providers of "remote computing services" or "electronic communications services."  For ease of reference, this brief will refer to these entities as ISPs.

[9] For example, if targets or witnesses accessed the same wireless router for Internet access, their Internet activities would bear the same IP address.

"governmental entity['s]" offer of "specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought[ ] are relevant and material to an ongoing criminal investigation." JA 240 (quoting 18 U.S.C. § 2703(d)). Applications for Section 2703(d) orders may set forth any justification for sealing and non-disclosure[10] as well as the necessary factual showing; thus, no separate motion to seal or motion for non-disclosure need be filed. Section 2703(d) orders are assigned an "ec" docket number by the Clerk's Office. JA 186-87. If a Section 2703(d) order is sealed, the docket reflects - at a minimum - the docket number, the date the docket number was assigned, the judge to whom it was assigned, and a notation that the matter is under seal. JA 278.

When prosecutors seek to obtain all records and information pertaining to a subscriber or customer, including the contents of all communications - such as e-mails or other private messages - they must obtain a warrant. *See* 18 U.S.C. § 2703(a), (b)(1)(A). A warrant may issue upon the setting forth and swearing to of facts establishing probable cause, which this Court has explained "exist[s] where

---

[10] Section 2705(b) enables the court to "command" the ISP "not to notify any person of the existence of" the order "for such period as the court deems appropriate." 18 U.S.C. § 2705(b). The court "shall enter" a non-disclosure order if "it determines that there is reason to believe" notification will endanger someone's life or physical safety; result in flight from prosecution, destruction of or tampering with evidence, or intimidation of potential witnesses; or otherwise seriously jeopardize an investigation or unduly delay a trial. *Id.*

the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in the place to be searched." *United States v. Blauvelt*, 638 F.3d 281, 287 (4th Cir. 2011). Search warrants are automatically sealed until they are executed. *See* E.D.Va. Local Criminal Rule 49(B). If post-execution sealing is also required (as is often the case with search warrants directed to ISPs, as a target or witness will not be made aware of the investigation as he would if his residence was searched), the prosecutor must file a separate motion for sealing. *See id.* In the Eastern District of Virginia, search warrants are assigned a "sw" number by the Clerk's Office.[11] Prior to execution, search warrants are not docketed. Post-execution, the docketing procedure for sealed search warrants and sealed Section 2703(d) orders is the same.

---

[11] Though the "sw" docketing method is not mentioned in the lower courts' opinions, both the magistrate judge and the district court in fact evaluated and considered the docketing processes in the Eastern District of Virginia in reaching their opinions. *See* JA 173 ("[U]pon further review and consideration of the Clerk's Office procedures . . . ."); JA 278 ("The Court has has examined the Clerk's docketing procedures thoroughly."). *See*, *e.g.*, *Horton v. West*, No. 1:10cv154, 2011 WL 124602, *4 n.5 (E.D. Va. Jan. 13, 2011) ("It is well established that a court may take judicial notice of its own records and files, whether it is requested to do so or not.") (citing Fed. R. Evid. 201). As such, this Court may also consider the "sw" docketing procedure. *See*, *e.g.*, *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) ("[W]e may consider facts on which the district court properly took judicial notice.").

18

## SUMMARY OF ARGUMENT

The Subscribers claim that the district court improperly applied a "clearly erroneous or contrary to law" standard of review to the magistrate judge's orders, and should have applied a *de novo* standard of review instead. The district court provided a detailed legal analysis on this point, which demonstrates that the "clearly erroneous or contrary to law" standard is correct. And the Subscribers' challenge is merely academic, as the district court also applied a *de novo* standard of review and found the magistrate judge's ruling correct under that more stringent standard as well.

The Subscribers persist in their argument that there is a First Amendment right of access to Section 2703(d) orders issued as part of an ongoing criminal investigation, and that, under the common law standard for access, any government interest in keeping details of ongoing investigations secret is outweighed by the "strong public interest in having access to these judicial orders." Brief at 35. Case law does not support the Subscribers' arguments, as there is neither a First Amendment right nor a common law presumption of access to Section 2703(d) orders. And, even if this Court were to disagree and find a common law presumption of access, that presumption would be outweighed by the countervailing interest in keeping private such information as the identity of witnesses, the ISP accounts the United States is targeting, and the path the

19

investigation has taken to date.  As the Subscribers have stated consistently

throughout these proceedings, their motivation for unsealing is to impede the grand

jury investigation by challenging other investigative orders pertaining to them,

which they lack standing to do, *see* JA 150, 243, 258, 270 - and which is hardly the

"public interest" they claim to represent on appeal.

The Subscribers further request public docketing of all documents related to

Section 2703(d) orders pertaining to them.  The Subscribers mischaracterize the

Eastern District of Virginia's "running list" as a "sealed docket," and argue that

individual docket entries are instead necessary.  But the running list provides

sufficient information to inform the public that an investigative order has been

issued and, if applicable, was placed under seal, which is all that is required.  The

Subscribers have no right to additional detailed information during the course of an

active criminal investigation.

## STANDARD OF REVIEW

As explained *supra* at 4-6, the Subscribers attempt to style as a direct appeal

what is in fact a petition for a writ of mandamus.  This Court "refrain[s] from

issuing a writ of mandamus in all but the most extraordinary circumstances to

avoid circumventing congressional judgments about the proper scope of appellate

jurisdiction."  *In re Blackwater Security Consulting LLC*, 460 F.3d 576, 593 (4th

Cir. 2006).  To be entitled to relief, "the party seeking the issuance of the writ

20

[must] have no other adequate means to attain the relief he desires." *Moussaoui*, 333 F.3d at 517 (quoting *Kerr*, 426 U.S. at 403).  Moreover, "the petitioner bears 'the burden of showing that [his] right to issuance of the writ is clear and indisputable.'" *Id.* (quoting *Bankers Life*, 346 U.S. at 384).

The standard of review for this petition for a writ of mandamus depends on whether, and on what basis, the public is entitled to access to Section 2703(d) orders.  Where there is a First Amendment right of access to a document, this Court reviews a district court's decision *de novo*.  *See Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).  Where there is a common law presumption of access, a sealing decision is "committed to the sound discretion of the judicial officer who issued the [document]", and this Court reviews the sealing decision for an abuse of discretion.  *Media Gen.*, 417 F.3d at 429.[12]

---

[12] The Subscribers cite a First Circuit case in support of their statement that, where a common law presumption of access exists, the court's scrutiny is "more rigorous than garden-variety abuse of discretion review."  Brief at 17 (citing *In re Providence Journal*, 293 F.3d 1, 10 (1st Cir. 2002)).  That is simply not the law in this Court.  The Subscribers also attempt to broaden the holding of *Alexander v. Boyd*, 113 F.3d 1373, 1381 (4th Cir. 1997), which merely held that, notwithstanding abuse of discretion review for an award of attorney fees, this Court applies a *de novo* standard of review to the extent the award was based on statutory amendments to Section 803(d) of the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996).

## ARGUMENT

I.  **THE DISTRICT COURT PROPERLY APPLIED A "CLEARLY ERRONEOUS OR CONTRARY TO LAW" STANDARD OF REVIEW TO THE MAGISTRATE JUDGE'S SEALING DECISION**

The Subscribers argue that the district court improperly applied a deferential standard of review to the magistrate judge's denial of their unsealing motion, because the magistrate judge's decision was "dispositive" of their motion.

The Subscribers are incorrect that the magistrate judge's decision was "dispositive." The scope of the "matter" at hand is not the Subscribers' motion. Brief at 17. If that were true, a third party who files a motion in a criminal case would always receive *de novo* review, because the denial of his motion would be "dispositive" of his request, regardless of whether he could make further motions or seek to intervene on other grounds.[13] Rather, as the district court properly held, the matter at issue is the ongoing criminal investigation. JA 234-37. Indeed, in their initial motion before the magistrate judge, the Subscribers described the "matter" as the government's investigation. *See* Motion for Unsealing of Sealed Court Records 2 (filed Jan. 26, 2011) (Dkt. 3). The magistrate judge's order does

---

[13] This would create an unusual - and potentially unjust - system wherein the third party intervenor would receive more favorable review than the criminal defendant, as the criminal defendant's own motions would be reviewed under the "clearly erroneous or contrary to law" standard unless they disposed of a claim or defense in the criminal case. *See* Fed. R. Crim. P. 59(b).

22

not terminate the criminal investigation, and thus is not "dispositive" as to any matter.  JA 235.

Strong policy reasons also counsel against applying a *de novo* standard in this context.  As the district court noted, this Court's case law suggests that the judicial officer closest to the facts and investigation should have the most discretion regarding sealing.  JA 237-38; *see Media Gen.*, 417 F.3d at 429.  Here, that is the magistrate judge.[14]  Moreover, the Subscribers' challenge, which comes in the midst of a grand jury investigation that may result in criminal charges, is the functional equivalent of a "pre-trial matter."  "Pre-trial matters" are subject to a more deferential standard of review because, as noted by the district court, the failure to give deference to the initial finder of fact could lead to ongoing litigation which would grind the investigative process to a halt.  JA 237.

*Aluminum Company of America (ALCOA) v. EPA*, 663 F.2d 499 (4th Cir. 1981), does not require a different result.  Although the panel in *ALCOA* held that a district court reviewing a magistrate judge's decision regarding an administrative search warrant on the basis of 28 U.S.C. § 636(b) was subject to *de novo* review, *id.* at 502 n.8, the grand jury context is distinguishable.  As noted by the district

---

[14]  Contrary to the Subscribers' assertions, the district court correctly distinguished *In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 326 n.2 (4th Cir. 1991), on this ground, as the issue in that case was whether a district court should defer to a magistrate judge's view of the safeguarding role of *voir dire*, which a magistrate judge has no experience with.  JA 238-39.

23

court, courts do not defer to the existence of administrative investigations because no judicial process is involved.  JA 235-36 (quoting *Reich v. Nat'l Eng'g & Contracting Co.*, 13 F.3d 93, 95-96 (4th Cir. 1993)).  Where an ongoing grand jury investigation would be impeded by *seriatim* litigation, deference to the magistrate judge is appropriate.

Finally, the Subscribers' argument is merely academic, as the district court "also conducted a *de novo* review and f[ound] that Magistrate Judge Buchanan's findings and orders survive the more demanding scrutiny."  JA 231 n.7.  The Subscribers' argument that this Court cannot credit the district court's footnote, as the body of the opinion does not clearly reveal a *de novo* review, is without merit. Indeed, this Court itself utilizes footnotes to indicate that it has also conducted a more stringent review.  *See*, *e.g.*, *Sto Corp. v. Lancaster Homes, Inc*., 11 Fed. App'x 182, 187 n.2 (4th Cir. 2001) ("Sto argues that . . . we should adopt a de novo or more rigorous abuse of discretion standard of review. We do not need to reach this question because even under a de novo standard of review our result would be the same.").  Thus, remand is not required.

## II. THERE IS NO JUSTIFICATION FOR UNSEALING OTHER LAWFUL ORDERS ISSUED AS PART OF THE UNITED STATES' ONGOING CRIMINAL INVESTIGATION

### A. There is No Public Right of Access to Section 2703(d) Orders

#### 1. Section 2703(d) Orders are Not "Judicial Records"

There is not a public right of access to each and every document issued by a judge. Rather, the right of access is limited to "judicial records." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). Though the Fourth Circuit has not defined this phrase, it has cited with approval the Second Circuit's guidance in *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995):

> We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.

*See United States v. Moussaoui*, 65 Fed. App'x 881, 889 (4th Cir. 2003) (noting that some sealed documents in government appendix "may not qualify as 'judicial records' at all"); *see also*, *e.g.*, *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 11 (1st Cir. 1986) ("We think it is clear and hold that there is no public right of access to documents considered in civil discovery motions").

Under this standard, Section 2703(d) orders that may have been issued in this investigation are not "judicial records." They are not "useful to the judicial process" as they are, at root, a vehicle for obtaining business records. Such

25

business records may be obtained if they are "relevant and material to an ongoing investigation," JA 244 (quoting 18 U.S.C. 2703(d)), which is a broad standard. As the district court noted, "[t]he government need not show actual relevance, such as would be required at trial." *Id.* Any Section 2703(d) orders issued in this investigation would not affect, let alone dispose of, a party's substantive rights. *See* JA 264 ("Issuing a § 2703 order affects none of the subject's protected interests, such as life, liberty, or property."). Moreover, as the district court noted, it is "'the governmental entity,' not the judicial officer responsible for evaluating the application," that may "require disclosure" of the requested information. JA 271. To the extent business records obtained through a Section 2703(d) order will be eventually used at trial, they do not constitute a party admission (as would records seized through a search warrant), but are admissible as business records. In this sense, the Section 2703(d) orders are akin to grand jury subpoenas, notwithstanding that a judge, rather than the grand jury, authorizes the request. *See*, *e.g.*, *United States v. McDougal*, 559 F.3d 837, 840 (8th Cir. 2009) ("general right to inspect and copy public records and documents, including judicial records and documents," does not include grand jury materials); *United States v. Smith*, 123 F.3d 140, 156 (3d Cir. 1997) ("Unlike judicial records to which a presumption of access attaches when filed with a court, grand jury materials have historically

been inaccessible to the press and the general public, and are therefore not judicial

records in the same sense.").

2.     Not All "Judicial Records" Are Subject to a Presumption of Access

Even if this Court disagrees and finds that Section 2703(d) orders are

considered "judicial records," it does not follow that there is a presumption of

access to such orders.  Traditionally, investigative proceedings have been closed to

the public, including targets and witnesses.  *See Press-Enterprise II*, 478 U.S. at 10

("Grand jury proceedings have traditionally been closed to the public and the

accused.")*; Illinois v. Abbott & Assoc., Inc.*, 460 U.S. 557, 571 (1983) (noting that

non-disclosure rules governing Civil Investigative Demands ("CID") "also

underlie the traditional secrecy accorded to the grand jury"); *In re Motion of Dow

Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998) ("Although some have identified

a common law tradition of public access to criminal trials, this never extended to

preindictment, pretrial proceedings involving a grand jury.").

The reason for this is twofold:  first, there is no history of public access to

pre-indictment investigations.  *See Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S.

211, 218 n.9 (1979) (noting that investigative proceedings have been kept secret

since at least the 17th century).  This is likewise true for Section 2703(d) orders,

which have only existed since 1986 and were thus unknown at common law.  *See*

Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat.

1848 (1986).

Second, "[t]here is . . . no right of access to 'documents which have

traditionally been kept secret for important policy reasons.'" *Dow Jones*, 142 F.3d

at 504 (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir.

1989)).  The policy reasons for the secrecy of Section 2703(d) orders are identical

to the policy reasons for grand jury and CID secrecy.  *See Douglas Oil*, 441 U.S. at

219; *Abbott & Assoc.*, 460 U.S. at 571.  A Section 2703(d) order reveals that a

criminal investigation exists, and could identify a potential witness (the ISP),

target(s) (the customer(s)), and important information of interest to the

investigation (the target account(s) or communication service(s), specific dates,

etc.).  Revealing such information could cause a target to flee or may improperly

influence a witness.  *See Douglas Oil*, 441 U.S. at 219.  Moreover, if no indictment

is returned, a Section 2703(d) order could identify individuals who may have been

suspected of criminal wrongdoing but were exonerated by the grand jury.  *Id.*

Indeed, Section 2703(d) orders are simply another tool used to gather information

as part of federal criminal investigations, which must, with few exceptions, be

presented to a grand jury if charges are to be brought.  *See* U.S. Const. amend. V.

The policy reasons for secrecy are reflected in the Eastern District of

Virginia's local rules and docketing procedures.  Local Criminal Rule 57.1(B)

28

explicitly recognizes an interest in the secrecy of pending investigations by limiting public disclosures made by attorneys who participate in such matters. *See* E.D. Va. Loc. Cr. R. 57.1(B) (requiring lawyers involved with pending investigatory matters to refrain from making any extrajudicial statements regarding the matter where there is a reasonable likelihood the statements would be disseminated publicly and the statements do not "aid in the investigation"). With respect to docketing, grand jury subpoenas, which are court orders, *see Brown v. United States*, 359 U.S. 41, 48 (1959), *overruled on other grounds by Harris v. United States*, 382 U.S. 162 (1965), are not publicly docketed. *See In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000). Nor are other proceedings ancillary to the investigative process, such as motions to quash or to compel. *See id.* ("It cannot be said here that the District Court abused its discretion in failing to promulgate a generic rule . . . requiring a public docket for all grand jury ancillary proceedings."). Courts also routinely seal and do not publicly docket the issuance of wiretaps, pen registers, and other requests for records issued as part of ongoing investigations. *See* Tim Reagan and George Cort, *Sealed Cases in Federal Courts* 21-22 (Federal Judicial Center 2009) (hereinafter "*Sealed Cases*"), available at: http://www.fjc.gov/public/pdf.nsf/lookup/sealcafc.pdf/$file/sealcafc.pdf (visited Feb. 29, 2012). Consistent with these principles, the Eastern District of Virginia

29

dockets sealed Section 2703(d) orders, sealed search warrants, and sealed cases in the same manner.

The policy reasons for the secrecy of Section 2703(d) orders also differentiate this case from *Goetz*, where this Court held there is a common law presumption of access to records related to search warrants.[15]  *See* 886 F.2d at 65. The justifications for investigative secrecy are diminished where, as in *Goetz*, a search warrant is executed at a physical premises, as execution is typically a public act known to the owner of the place to be searched or any person whose property is seized.  *See* Fed. R. Crim. P. 41(f)(1)(C) (requiring delivery of search warrant to owner of property or at place searched).  This is fundamentally different from a grand jury subpoena, Section 2703(d) order for business records, or search warrant for electronic evidence from a third party, which are frequently obtained without

---

[15] Although the district court found *Goetz* to be "dispositive," JA 276, this Court may affirm a district court decision on other grounds.  *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (en banc).  In the March 11 Order, the magistrate judge correctly concluded that the Subscribers had *no* right of access to the requested documents.  The magistrate judge explained that, in the investigatory phase, "law enforcement agencies must be able to investigate crime without the details of the investigation being released to the public in a manner that compromises the investigation."  JA 121 (quoting *Va. Dep't of State Police*, 386 F.3d at 574).  The magistrate judge noted various ways that secrecy is critical to criminal investigations, including preventing destruction of evidence and protecting witnesses against intimidation and retaliation.  *Id.*

public disclosure.[16]  *See* Fed. R. Crim. P. 6; 18 U.S.C. § 2705(b); E.D. Va. Loc. Crim. R. 49(B) (providing for sealing of search warrant and affidavit).

### B.    There is No First Amendment Right of Access to Section 2703(d) Orders

For a First Amendment right of access to a record to exist, (1) the place or process must have been historically open to the press and public, and (2) public access must play a significant positive role in the particular process.  *See Goetz*, 886 F.2d at 63-64 (citing *Press-Enterprise II*, 478 U.S. at 8-10).[17]  This Court has recognized a First Amendment right of access in documents and hearings integral to judicial proceedings, such as documents filed as part of a summary judgment motion, *see Va. Dep't of State Police*, 366 F.3d at 578-79, or in connection with plea hearings and sentencing hearings in criminal cases, *see Washington Post*, 807 F.2d at 390.  In contrast, this Court has declined to decide whether a transcript for a pre-trial discovery hearing is subject to First Amendment right of access, and

---

[16] Moreover, most of the information sought by the Twitter Order could be obtained via grand jury subpoena.  It would be an odd result to require the United States to forfeit the confidentiality of an investigation when, acting in an abundance of caution, it seeks a Section 2703(d) order for an investigative step that it could largely undertake without it.

[17] The Subscribers argue that, where a legal process is relatively new, the "historical" prong gives way to the "logic" prong, effectively transforming the two prongs of the *Press-Enterprise II* holding into a disjunctive test.  *See* Brief at 25-26. But one of the very cases they rely on acknowledged that the Fourth Circuit does not alter the *Press-Enterprise II* test in that way.  *See United States v. Gonzales*, 150 F.3d 1246, 1258 (10th Cir. 1998) (citing *Goetz*, 886 F.2d at 64).

remanded a district court's decision that documents attached to non-dispositive

pre-trial pleadings are subject to a First Amendment right of access, noting that it

was "not at all convinced that this is a correct assumption." *See Va. Dep't of State

Police*, 366 F.3d at 580. Against this backdrop, the Subscribers' claim of a First

Amendment right of access fails.

   *First*, as explained *supra* at 29, there is no historical right of access to pre-

indictment criminal proceedings. Although certain pre-indictment investigative

proceedings are overseen by the judiciary, *see Morrison v. Olson*, 487 U.S. 654,

681 n.20 (1988), such proceedings have not historically been open to the public.

*See Times Mirror*, 873 F.2d at 1214 ("[T]he experience of history implies a

judgment that warrant proceedings and materials should not be accessible to the

public, at least while a pre-indictment investigation is still ongoing . . . ."); *Dow

Jones*, 142 F.3d at 502-03 (holding there is no right of access to proceedings

ancillary to the grand jury). Such proceedings are typically not public for an

important reason - to protect ongoing criminal investigations. *See Times Mirror*,

873 F.2d at 1213 ("Openness may, for example, frustrate criminal investigations

and thereby jeopardize the integrity of the search for truth that is so critical to the

fair administration of justice."); *United States v. McVeigh*, 918 F. Supp. 1452,

1457 (W.D. Okla. 1996) ("Every criminal prosecution in a federal court begins

with some investigation by one or more law enforcement agencies of government

to develop an evidentiary base for the necessary showing of probable cause. The documents generated during the investigation and the conduct of the investigators are largely shielded from public view."). The idea that criminal investigations should remain confidential prior to the return of a charging document is a concept that pre-dates the founding of our country, *see Douglas Oil*, 441 U.S. at 218 n.9, and one that has been repeatedly upheld by our courts, *see United States v. United States District Court*, 407 U.S. 297, 321-22 (1972) ("The investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved.").

There is likewise no history of openness in Section 2703(d) proceedings. Section 2703(d) applications are traditionally submitted *ex parte* and *in camera*. The statute specifically authorizes the United States to obtain an order prohibiting notification of the existence of a Section 2703(d) order to anyone. *See* 18 U.S.C. § 2705(b). These factors alone are sufficient to defeat the Subscribers' First Amendment challenge. *See Goetz*, 886 F.2d at 63; *see also In re Application of the N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 (2d Cir. 2009) (holding no First Amendment right of access to wiretap materials where applications were created by statute and statute also had protective scheme); *Dow Jones*, 142 F.3d at 502-03 (holding no First Amendment right of access to proceedings ancillary to grand jury investigation because no tradition of openness).

33

*Second*, public access would not play a significantly positive role in the investigative process.  Investigations are necessarily conducted secretly, in order to protect the investigative process.  *See In re Macon Telegraph Pub. Co.*, 900 F. Supp. 489, 492 (M.D. Ga. 1995) ("The very nature of . . . investigative proceedings . . . is secretive . . . . The court refuses to find the existence of a right that would in some circumstances possibly destroy institutions (such as the grand jury and warrant issuance processes) so valuable and necessary to society.").  Any other Section 2703(d) orders should remain sealed for the same reason certain search warrants are sealed:  they identify witnesses, reveal electronic accounts of interest to the investigation, and could allow subjects of the investigation to frustrate the aims of the order by destroying evidence or altering behavior.  *See Goetz*, 886 F.2d at 64.  Indeed, after receiving notice of the existence of the Twitter Order, appellant Jacob Appelbaum called on his Twitter "followers" to undertake just such a change in behavior.  *See* "Tweet" of Jacob Appelbaum @ioerror (Jan. 7, 2011), available at: http://twitter.com/#!/ioerror/status/ 23545458433458177 ("Do not send me Direct Messages - My Twitter account contents have apparently been invited to the (presumably-Grand Jury) in Alexandria.") (visited Feb. 27, 2012).[18]

_____

[18] As noted *supra* at 9, the Twitter Order did not request message content, and thus would not have collected Direct Messages.  Thus, to the extent the government later developed probable cause to obtain the content of the account,  Appelbaum's "tweet" likely decreased the evidence available to the government.

Moreover, Section 2703(d) orders are often just a stepping stone in a criminal investigation. Records obtained through non-content Section 2703(d) orders can provide probable cause for the targeted account(s), allowing the government to later obtain private content, or even approval for a wiretap. Such records can also identify other witnesses, who may be called to testify before the grand jury. Disclosing the existence of Section 2703(d) orders could cause targets to cease using accounts that the government is aware of or encourage targets to open new accounts that the government is unaware of, frustrating the government's ability to obtain evidence.

The Subscribers identify no specific way in which openness furthers the Section 2703(d) process. Rather, they simply state that access to judicial records enable the public to serve "as a 'watchful eye' over the operation of government agencies and the courts, and in ensuring that our judicial system is fair, unbiased, trustworthy, and reaches the right results." Brief at 36-37. While this is an attractive general proposition, in the context of pre-indictment investigations a general benefit from openness is insufficient to overcome society's compelling interest in the secrecy of investigative proceedings and the prompt administration of justice. As the Ninth Circuit noted in *Times Mirror*:

> Appellants essentially argue that any time self-governance or the integrity of the criminal fact-finding process may be served by opening a judicial proceeding and its documents, the First

35

> Amendment mandates opening them to the public.  Were we to accept
> this argument, few, if any, judicial proceedings would remain closed.
> Every judicial proceeding, indeed every governmental process,
> arguably benefits from public scrutiny to some degree, in that
> openness leads to a better-informed citizenry and tends to deter
> government officials from abusing the powers of government.
> However, complete openness would undermine important values that
> are served by keeping some proceedings closed to the public.
> Openness may, for example, frustrate criminal investigations and
> thereby jeopardize the integrity of the search for truth that is so critical
> to the fair administration of justice.

873 F.2d at 1213; *see also Goetz*, 886 F.3d at 64 (citing *Times Mirror* in denying

First Amendment right of access to search warrant materials).

Judicial records may be sealed notwithstanding a First Amendment right of

access when sealing is "essential to preserve higher values and is narrowly tailored

to serve that interest."  *Id.* at 65-66.  Even in the First Amendment context, this

Court has noted its "complete agreement with the general principle that a

compelling governmental interest exists in protecting the integrity of an ongoing

law enforcement investigation."  *Va. Dep't of State Police*, 386 F.3d at 579.  This

Court further stated, "[a]lthough we need not attempt to catalogue the various

reasons which may be considered in deciding whether an asserted interest is

compelling, we note that one consideration is . . . whether the granting of access to

the contents of an ongoing police investigation file will disclose facts that are

otherwise unknown to the public."  *Id.*

36

Here, there can be no doubt that unsealing other Section 2703(d) orders in the government's active investigation would disclose facts that are unknown to the public. The identity of customer accounts and ISPs could alert other witnesses and targets that the government may be aware of their communications with the Subscribers, which could cause them to destroy evidence the government has not yet obtained or could cause them to flee. *See Douglas Oil*, 441 U.S. at 219. The mere *number* of Section 2703(d) orders issued would signal to targets and witnesses how heavily the government was relying on electronic communications, as opposed to other law enforcement tools, as part of the investigation. Dates of issuance would provide further information on the path and focus of the government's investigation at specific times.

The Subscribers attempt to downplay this risk by stating that they "already know the identity of their other online service providers . . . so unsealing documents disclosing those names would not lead to any additional risk of the destruction of evidence." Brief at 31. But there is a significant difference between the Subscribers knowing their ISPs and knowing that the government has sought their information (and potentially other information) from their ISPs. Witnesses and targets who have corresponded with accounts that have not been publicly disclosed may believe that their communications are safe, and may change their behavior or destroy evidence presently unknown to the government if they realize

37

that their identities have been revealed to the government.  In addition, keeping

Section 2703(d) orders sealed allows the government to use information obtained

from those orders to confirm the accuracy of information provided by, and assess

the credibility of, cooperating witnesses.   Each of these reasons for secrecy is

"compelling" and would override a First Amendment right of access in the context

of a pre-indictment investigation.

### C.     Any Common Law Presumption of Access to Section 2703(d) Orders is Outweighed by Competing Interests

As this Court has explained, "[t]he distinction between the rights of access

afforded by the common law and the First Amendment is significant, because the

common law does not afford as much substantive protection to the interests of the

press and the public as does the First Amendment."  *Va. Dep't of State Police*, 366

F.3d at 575 (internal citation and quotation marks omitted).   "Consequently, the

common law does not provide as much access to the press and public as does the

First Amendment."  *Id.* (citation and quotation marks omitted).

The common law presumption of access recognized by the Supreme Court in

*Nixon*, 435 U.S. at 597, is guided by the lower courts' supervisory powers; a lower

court "may, in its discretion, seal documents if the public's right of access is

outweighed by competing interests."  *In re Knight Publishing Co.*, 743 F.2d 231,

235 (4th Cir. 1984); *see Moussaoui*, 65 Fed. App'x at 886 ("The common law right

38

of access must yield to the supervisory power of the court to control its own records when the public's right of access is outweighed by competing interests.") (internal quotation marks omitted).[19]  Such competing interests may include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important *historical* event; and whether the public has already had access *to the information* contained in the records."  *Knight*, 743 F.2d at 235 (citing *Nixon*, 435 U.S. at 597-608) (emphases added).  Applying this test, the Subscribers' argument fails.

*First*, this is the antithesis of an historical event.  The Subscribers seek unsealing of multiple investigative orders in an active criminal investigation that they themselves describe as "a matter of national importance."  Brief at 36.  As such, this factor from *Knight* (enhancement of public understanding) is inapplicable here.

---

[19] The district court correctly rejected the Subscribers' argument that the magistrate judge was required to find that competing interests "heavily outweigh" the public interest in access.  Brief at 40.  As the district court noted, neither *Goetz* nor *Knight* used a "heavily outweigh" standard, and the intervening case of *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988), which did, relied on *Nixon*, just as *Goetz* and *Knight* had.  JA 280.  Moreover, to the extent *Rushford* purported to overrule the standard adopted in *Knight*, it had no power to do so.  *See*, *e.g.*, *Jones v. Angelone*, 94 F.3d 900, 905 (4th Cir. 1996) ("[W]e cannot, as a panel of the court, overrule the decision of another panel; only the *en banc* court may overrule a prior panel decision.").

Even if this factor were applicable, contrary to the Subscribers' claim, *see* Brief at 37, the public debate will *not* be furthered by unsealing other Section 2703(d) orders. There is a significant difference between post-charging scrutiny and criticism of grand jury and law enforcement processes on the one hand, and real-time interference with and challenges to lawful investigative techniques on the other.[20] Moreover, the Subscribers completely disregard the important public interest in the prompt investigation and prosecution of crimes. *See*, *e.g.*, *Bloate v. United States*, – U.S. –, 130 S. Ct. 1345, 1356 (2010) (noting "public interest in the swift administration of justice"); *United States v. Dionisio*, 410 U.S. 1, 17 (1973) ("Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws."). The Subscribers' desire that the public "know about legal steps that the government is

---

[20] Though on appeal the Subscribers purport to represent a public interest in unsealing, they have consistently stated their goal as to "unseal only the § 2703 proceedings related to them so that Movants can challenge the orders." *See* Reply in support of Motion for Unsealing of Sealed Court Records 10 (filed Feb. 10, 2011) (Dkt. 29); Brief at 39 ("To the extent any of those orders to other companies have not been complied with already, Movants need to have them unsealed so that they can challenge them.").

taking to address this matter of national concern," Brief at 37, will be fulfilled

when the government in fact takes legal steps - by filing a charging document.[21]

*Second*, the Subscribers seek access to information that is not already in the

public domain. As explained *supra* at 38-39, the identity of customer accounts and

ISPs could alert other witnesses and targets that the government may be aware of

their communications with the Subscribers, which could cause them to flee or

destroy evidence the government has not yet obtained. *See Douglas Oil*, 441 U.S.

at 219.[22] The mere *number* of Section 2703(d) orders issued would signal to

targets and witnesses how heavily the government was relying on electronic

communications, as opposed to other law enforcement tools, as part of the

investigation. Dates of issuance would provide further information on the path and

focus of the government's investigation at specific times.

As the district and magistrate judges correctly found, the cases relied on by

the Subscribers are distinguishable. JA 279. Although the document sought by the

Washington Post in *Application and Affidavit for a Search Warrant* was a search

---

[21] The Subscribers also overstate "Congress['] need to know." Brief at 38. Congress can, and regularly does, request information on Department of Justice and law enforcement activities. It is unlikely that, if other Section 2703(d) orders are unsealed, Congress will abandon this method in favor of calculating statistics itself.

[22] Indeed, the very publicity that the Subscribers strive to generate can intimidate or deter witnesses from coming forward, result in witness collusion, or lead to intimidation of grand jury members. *See Douglas Oil*, 441 U.S. at 218.

41

warrant affidavit, the unsealing request at issue was initiated *after* the government's investigation was concluded. *See* 923 F.2d at 326. The Washington Post had also sought to unseal the affidavit *during* the investigation, and the magistrate denied that request. *See id*. Post-investigation, the government agreed that release of the affidavit was proper; the issue on appeal was whether a single paragraph the government sought to redact should also be released. *See id.* In holding that it should, this Court explicitly noted that its holding did not extend to situations where an investigation was ongoing: "We do not address the situation where disclosure of an affidavit would compromise an ongoing investigation or endanger the safety of witnesses. Obviously, the ameliorative effects of *voir dire* are not available to remedy those consequences, and such cases accordingly raise a different set of concerns." *Id.* at 331 n.4.

*Va. Dep't of State Police* dealt primarily with the more generous First Amendment right of access. In that case, Earl Washington, Jr., who had been convicted of and imprisoned for the rape and murder of a Culpeper, Virginia, woman based on his confession, but was later exonerated based on the absence of his DNA from the crime scene, had filed a civil rights lawsuit challenging his detention. After extensive pleadings and a hearing, the district court agreed with the police that certain documents – identifying a suspect whose DNA *was* found at the crime scene – should remain under seal. *See* 386 F.3d at 572. However, the

42

police had agreed to unseal other documents that identified the suspect and disclosed that his DNA was found at the crime scene. *See id.* In light of this disclosure, the Fourth Circuit held that, notwithstanding its "sympath[y] to the desire of the state police to keep aspects of a murder investigation off the public record," *id.* at 573, nine documents – eight of which were filed as part of a summary judgment motion, and one for which no specific reason for sealing was provided – should be unsealed, *id.* at 579-80. The Court did not recognize a general right of access to investigative materials, and instead found the issue "quite narrow" and based on "the unique circumstances of th[e] case." *Id.* at 574. Indeed, the Court remanded for reconsideration of four documents that the district court had also ordered unsealed, stating that it was "not at all convinced that [the district court's assumption that there was a First Amendment right of access] is a correct assumption." *Id.* at 580. *See also Charlotte Observer*, 882 F.2d at 853 (granting writ of mandamus where court ordered change of venue hearing - which was subject to First Amendment right of access - closed to avoid "republication" of information previously published by newspapers).

The government's competing interest outweighs any common law presumption of access for several other reasons as well. The Subscribers' request could identify other witnesses, if any, from whom the government had requested evidence. The chilling effect on potential witnesses would jeopardize the

43

government's investigation. *See In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 27-28 (2d Cir. 1981) (noting prevention of influence on potential witnesses is fundamental justification for secrecy of investigations); *United States v. Penrod*, 609 F.2d 1092, 1096 (4th Cir. 1979) ("One important reason for this desire to maintain secrecy is to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes.") (internal quotations and citations omitted). "Specific and articulable facts" justifying a Section 2703(d) order, and probable cause justifying a warrant, are frequently derived from evidence obtained from cooperating witnesses (such as ISPs). Prospective cooperating witnesses may become hesitant to come forward if they believe that their participation will not be held in confidence. *See Douglas Oil*, 441 U.S. at 219. Witnesses who *do* agree to participate in the investigation may be less likely to participate fully and fairly based on fear of public scrutiny, retribution, or inducements. *See id.*

In sum, even if there is a common law presumption of access to Section 2703(d) orders, it is outweighed in this case - at this point - by the competing interests in protecting the integrity of an ongoing criminal investigation.

44

### D.     The District Court Was Not Required to Engage in a Document-By-Document Sealing Analysis

The Subscribers argue that a court must undertake a document-by-document sealing analysis whenever a sealing order is challenged. Brief at 40. However, that is not the law. The very cases cited by the Subscribers suggest only that the court's sealing analysis must be specific to the source of the right of access for each *category* of documents. *See Va. Dep't of State Police*, 386 F.3d at 580-81 (affirming unsealing order for all documents attached to summary judgment motion; remanding for reevaluation of source of right of access for two other categories of documents); *Stone v. University of Maryland Medical System Co.*, 855 F.2d 178, 180 (4th Cir. 1988) (rejecting sealing of entire litigation docket, and noting that "different levels of protection may attach to the various records and documents involved in this case"). Here, the Subscribers do not dispute that, whatever the right of access for Section 2703(d) orders issued in this investigation, the source of the right is the *same* for all such orders. As such, there is no legal basis for requiring the court to undertake document-by-document review.[23]

---

[23] This is particularly true where, as here, the Subscribers request document-by-document analysis of unidentified Section 2703(d) orders that were not before the magistrate judge or the district court. There is certainly no legal obligation for a judge to seek out and analyze all orders pertaining to a particular witness or target of an investigation, and the Subscribers cite no case law to the contrary. The public right of access is not meant to be a tool for targets or witnesses to learn about the scope of the government's investigation into their activities.

45

The magistrate judge nonetheless undertook a document-by-document sealing analysis with respect to the pleadings in this litigation.  In her *sua sponte* order of February 9, 2011, the magistrate judge directed the parties to file supplemental briefs addressing which specific pleadings should remain sealed.  JA 59.  The magistrate judge obviously relied on that briefing when she ordered certain documents unsealed and others redacted.  JA 165.

Before the district court, the Subscribers focused primarily on unsealing the application for the Twitter Order, but have abandoned that argument on appeal.  The district court's analysis mirrored the Subscribers' arguments, though his holding plainly stated that it applied to *all* documents sought by the Subscribers.  *See* JA 277 ("The Court therefore concludes that Petitioners have no First Amendment right of access to the application for the Twitter Order or any other Section 2703 orders sought in this investigation.").  And even if this Court were to agree with the Subscribers that document-by-document analysis is required, the appropriate remedy would be remand, not reversal.  *See Va. Dep't of State Police*, 386 F. 3d at 581 (unsealing determinations are "properly made in the first instance from the superior vantage point of the district court and are necessary for meaningful appellate review") (internal quotation marks omitted); *In re State-Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (remanding for clear articulation of sealing rationale, noting appellate review was not possible on "present record").

46

### E.    Redaction Will Not Adequately Protect the Integrity of the Criminal Investigation

Keeping all Section 2703(d) orders related to this investigation sealed until a charging document is filed is "narrowly tailored" to preserve the integrity of the active investigation, and there are no less drastic options that will preserve that interest.  Even stringent redaction would inform the public of the number and type of orders that have been issued in this investigation, giving targets information about the scope and direction of the investigative inquiries.  As stated *supra* at 43, the mere *number* of Section 2703(d) orders will convey to targets how heavily the government has been monitoring electronic communications, which itself could cause targets and potential witnesses to alter behavior.  Maintaining sealed orders until a charging document is filed will not unduly burden the public or the Subscribers.  *See Media Gen.*, 417 F.3d at 431.  The cases relied on by the Subscribers, which involved far different procedural postures, are not to the contrary.  *See Knight*, 743 F.2d at 235 (noting redactions should have been considered because "jury had been selected at the time the sealing order was entered"); *Goetz*, 886 F.3d at 66 (court "must consider alternatives to sealing" search warrant affidavits after search warrants publicly executed and returns filed); *Stone*, 855 F.2d at 181 (court that sealed entire record of civil docket in case should have considered less restrictive alternatives).

47

It would also be impractical to require redaction at this point, in the midst of an active criminal investigation. The government's interest in protecting the integrity of the investigation is ongoing, and thus the government's justification for sealing could change over time. For instance, information that is of little relevance now could become relevant later, after additional evidence is collected. The evolving nature of criminal investigations provides yet another argument against *ex ante* redactions.

Moreover, as a practical matter, there is little to no public benefit to the redacted version of Section 2703(d) orders as proposed by the Subscribers. If such orders were filed removing the names of the witness (ISP), customer(s), and any case-specific information (such as dates of interest and any unique information sought), the result would be nothing more than a general format for a 2703(d) order. That information is already publicly available both from the format of the Twitter Order and from the Department of Justice's website. *See* U.S. Dep't of Justice Computer Crime & Intellectual Property Section, *Searching and Seizing Computers and Electronic Evidence Manual*, at Appendix B, available at: http://www.justice.gov/criminal/cybercrime/ssmanual/06ssma.html (visited Feb. 8, 2012). Thus, there is nothing to be gained, but much to be lost, from unsealing even redacted versions of other Section 2703(d) orders.

And finally, it is clear from the lower court opinions that the district and magistrate judges *did* consider alternatives to sealing. The magistrate judge ruled that many documents should be unsealed, including some with redactions. JA 165. The district court noted the Subscribers' complaint that "Magistrate Judge Buchanan failed to consider adequate alternatives to sealing." JA 275. Citing this Court's precedent, the district court ruled that the magistrate judge's sealing decisions were obvious from the record, which "provide[d] sufficient information for appellate review." *See* JA 280-81. For these reasons, there is no need to revisit the issue of redaction.

## III.  THE EASTERN DISTRICT OF VIRGINIA'S PUBLIC DOCKETING OF SECTION 2703(d) ORDERS IS LEGALLY SUFFICIENT

### A.  Public Docketing Method

In the May 4 Order, the magistrate judge ordered documents related to the Twitter Order assigned to the newly created "ec" docket, as case 1:11-ec-3, to be recorded "on the running list in the usual manner." JA 167. In the June 1 Order, the magistrate judge explained that the running list, which "shows at a minimum all assigned case numbers other than grand jury cases, and whether a particular case is under seal . . . satisfies the public's right to know that a particular case exists and has been sealed." JA 181. At a minimum, the running list informs the public of the docket number, the date the docket number was assigned, the judge it was assigned to, and whether the order was filed under seal. JA 278.

49

The Subscribers argue that the Eastern District of Virginia's method of publicly docketing Section 2703(d) orders is "contrary to the fundamental principles of our judicial system." Brief at 50. The Subscribers argue that, even for investigative orders under seal, "implicit holdings" of this Court require document-by-document docket entries, sufficient "to give the public a reasonable opportunity to challenge the sealing of each document in advance of the sealing."[24] Brief at 44, 48 (internal quotation marks omitted). That is not the law.

## B.     There is No Right to Public Docketing of Investigative Proceedings

Mandatory public docketing of a specific investigative proceeding is "virtually unknown" in the federal court system. *See Sealed Case*, 199 F.3d at 525. The sealing of investigatory proceedings is common. A 2009 report issued by the Federal Judicial Center found thousands of sealed matters related to investigative proceedings, and found that the median district had 20% of its magistrate cases sealed. *See Sealed Cases* 17, 21-22.

No statute or rule of procedure requires public docketing of investigative proceedings. Federal Rule of Criminal Procedure 55, which describes the recordkeeping responsibilities of the Clerk's Office in criminal cases, states:

---

[24] The Subscribers concede that the cases cited for this point "do not expressly discuss the need to docket each specific document or proceeding" and are distinguishable because "there was already a public docket for at least a portion of each of the cases." Brief at 48.

50

> The clerk of the district court must keep records of criminal proceedings in the form prescribed by the Director of the Administrative Office of the United States courts. The clerk must enter in the records every court order or judgment and the date of entry.

The Administrative Office of the United States Courts issues its guidance in the form of the *District Clerk's Manual*. But the *District Clerk's Manual* contains no specific guidance on the public docketing of Section 2703(d) orders, and the practice of a number of federal courts is not to docket sealed investigative matters publicly. *See Sealed Cases* at 1, 21. Thus, even if the Clerk's Office had no public docketing of Section 2703(d) orders, it would not violate Rule 55.

Other rules of criminal procedure, as well as the Eastern District of Virginia's local criminal rules, further demonstrate that public docketing is not required. Federal Rule of Criminal Procedure 49.1 deals with privacy protections for criminal filings. That rule exempts from the redaction requirement "a court filing that is related to a criminal matter or investigation and that is prepared before the filing of a criminal charge or is not filed as part of any docketed criminal case." Fed. R. Crim. P. 49.1(b)(7). Local Criminal Rule 49 states that records related to a search warrant do not even need to be filed, let alone docketed, until the search warrant is returned.[25]

---

[25]As noted *supra* at 20, when an under seal search warrant is returned, it is docketed in the same manner as an under seal Section 2703(d) order.

That the requested business records were sought by Section 2703(d) order rather than grand jury subpoena does not make public docketing a requirement. Like a grand jury subpoena, a Section 2703(d) order commands a third party to produce business records. Like a grand jury subpoena, there is a legal basis protecting a Section 2703(d) order from disclosure. *See* 18 U.S.C. 2705(b). Indeed, grand jury subpoenas are court orders, enforceable by civil and criminal contempt. *See Brown*, 359 U.S. at 49, *overruled on other grounds by Harris*, 382 U.S. 162 ("A grand jury is clothed with great independence in many areas, but it remains an appendage of the court . . . It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so."). The Clerk's docketing method for Section 2703(d) orders is a far cry from the "secret docket" cases cited by the Subscribers, all of which involved courts' attempts to prevent public access to even the fact that motions, responses, and other proceedings were occurring in ongoing or completed trials, or other adverse proceedings. *See State-Record*, 917 F.2d at 129; *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 86 (2d Cir. 2004); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993). As no presumption of access to Section 2703(d) orders exists, this Court should decline to impose detailed public docketing for sealed proceedings in an ongoing criminal

52

investigation. *See Media Gen.*, 417 F.3d at 432-33 (declining to order the Clerk's office to create a new docketing system for search warrants).

Moreover, the Eastern District of Virginia follows the same docketing procedure for sealed Section 2703(d) orders and sealed search warrants. There is nothing unique about Section 2703(d) orders that would warrant a more stringent docketing standard for those orders alone.

### C. The Eastern District of Virginia's System for Publicly Docketing Section 2703(d) Orders is Legally Sufficient

On appeal, the Subscribers raise various objections to the "ec" running list. In their statement of the issues, they complain only that the running list must include "the name and date" of any other Section 2703(d) orders. Brief at 2. Later in the brief, the Subscribers complain that the running list does not indicate "which documents were filed in each matter, whether the Court granted or denied any request for an order or the sealing request, whether any motions have been filed challenging the requests or orders, or the date any such documents were filed." Brief at 51. The Subscribers argue that only document-by-document docketing will provide the public and press with notice of case developments, *id.* at 44-45 -

ignoring that there is not yet any "case" to develop.[26]  These objections are

unfounded.

The Clerk's Office in the Eastern District of Virginia publicly dockets

Section 2703(d) orders in accordance with Local Criminal Rule 49.  The existence

of any sealed Section 2703(d) order is made public when the order is assigned an

"ec" docket number, while details of the sealed Section 2703(d) order are kept

private.  Under this Court's precedent and Eastern District of Virginia local rules,

when an order results from an investigative proceeding conducted *ex parte* and *in*

*camera,* "notice prior to the entry of an initial sealing order is not required.  Rather,

the notice requirement is fulfilled by docketing 'the order sealing the documents,'

which gives interested parties the opportunity to object."  *Media Gen.*, 417 F.3d at

430 (quoting *Goetz*, 886 F.2d at 65); *see* E.D. Va. Local R. 49(B) ("The Clerk shall

docket the motion [to seal a warrant, complaint, supporting affidavit, or

indictment] in a way that discloses its nature as a motion to seal.  No hearing is

required on motions covered by this section.  No separate motion to seal is

---

[26] The government has represented that, once charges are filed or the investigation is closed, it will move to unseal any other Section 2703(d) orders issued during the investigation.  Thus, this case is easily distinguishable from *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 877 (S.D. Tex. 2008), where the issue was "sealing and non-disclosure . . . for an indefinite period beyond the underlying criminal investigation."

necessary in investigative proceedings made confidential by law.").[27]  Unlike

active cases or in-court proceedings, there is no requirement for advance notice and

opportunity to challenge sealing of investigative materials.  The "ec" running list

provides public notice that an order has been issued, which allows a challenge by

any member of the public to the sealing of such order.  That is all the Subscribers

requested before the magistrate judge, and that request was granted through

creation of the "ec" docket.  *See* Motion for Unsealing of Sealed Court Records

(filed Jan. 26, 2011) (Dkt. 3) ("Here, no public docket sheet or docket entries are

even available for the public to see that something was filed under seal.").

    As the district court noted, the "ec" running list procedures "fall well within

the standards adopted by the Judicial Conference on March 17, 2009, which

allowed individual courts discretion to include information in excess of the case

name and number."[28]  JA 278 n.25.  Moreover, the Eastern District of Virginia

---

[27] The Subscribers' fear that the Eastern District of Virginia's docketing system "leave[s] the public guessing whether an order sealing the documents was ever entered", Brief at 48, is unfounded.  Per Local Rule 49(B), an "under seal" docket entry indicates that a sealing order was entered, either through a motion to seal or by operation of law.

[28] The Subscribers' suggestion to the contrary, *see* Brief at 57 n.28, is incorrect. The Judicial Conference standard, which is entitled "Sealed Cases," reads in full:

> In order to provide the public with information regarding the existence of sealed district court cases, the Committee recommended that the Conference approve the inclusion, on CM/ECF-generated reports of cases, of the case number and generic name (e.g., "Sealed versus Sealed") for each sealed

follows the exact same public docketing procedures for sealed Section 2703(d)

orders and sealed search warrants, which is precisely the treatment that the

Subscribers argue is appropriate. *See* Brief at 56 ("Section 2703 orders are no

different for public docketing purposes than search warrants . . . . There is no

reason for treating Section 2703-related documents any differently for public

docketing purposes.").

---

case, and that individual courts determine the additional information about
sealed cases (such as initials of the assigned judge, date of filing, or number
of days the case has been pending) that should be made available to the
public. The Conference adopted the Committee's recommendation.

*See* Report of the Proceedings of the Judicial Conference of the United States
(Mar. 17, 2009), available at:  http://www.uscourts.gov/FederalCourts/
JudicialConference/Proceedings/Proceedings.aspx?doc=/uscourts/FederalCourts/
judconf/proceedings/2009-03.pdf (visited Feb. 27, 2012).  The Eastern District of
Virginia provides the recommended information on the "running list," which is
publicly available from the Clerk's Office.  And, in any event, it is unclear whether
this standard is meant to encompass pre-indictment investigative tools such as
Section 2703(d) orders, as the standard refers to "cases" and gives as an example
"Sealed versus Sealed."

## CONCLUSION

For the reasons stated, this Court should deny the Subscribers' petition for a writ of mandamus.

Respectfully submitted,


Neil H. MacBride
United States Attorney

/s/ Lindsay Kelly
Lindsay Kelly
Andrew Peterson
Assistant United States Attorneys

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case.  The legal issues are straightforward and oral argument likely would not aid the Court in reaching its decision.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because this brief does not exceed 14,000 words (specifically 13,937
words), excluding the parts of the brief exempted by Fed. R. App. P.
32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this
brief has been prepared in a proportionally spaced typeface using WordPerfect X3
in 14-point Times New Roman typeface.


/s/ Lindsay Kelly
Lindsay Kelly
Assistant United States Attorney

59

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2012, the foregoing amended document was served on the following counsel of record through the CM/ECF system, if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Aden J. Fine
American Civil Liberties Union

125 Broad Street, 18th Floor
New York, NY 10004
afine@aclu.org

Cindy A. Cohn
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
cindy@eff.org

Rebecca K. Glenberg
American Civil Liberties Union of
        Virginia Foundation
530 E. Main Street, Suite 310
Richmond, VA 23219
rglenberg@acluva.org

*Counsel for Birgitta Jonsdottir*

John D. Cline
Law Office of John D. Cline
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
cline@johndclinelaw.com

Nina J. Ginsberg
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
nginsberg@dimuro.com

*Counsel for Rop Gonggrijp*

Steven P. Ragland
Rachael E. Meny
John W. Keker
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA 94111
sragland@kvn.com
rmeny@kvn.com
jkeker@kvn.com

John K. Zwerling
Stuart Sears
Zwerling, Leibig & Moseley, P.C.
180 North Alfred Street
Alexandria, VA 22314
JZ@Zwerling.com
Stuart@Zwerling.com

*Counsel for Jacob Appelbaum*

John Kuropatkin Roche
PERKINS COIE LLP
700 13th Street, NW, Suite 600
Washington, DC 20005-2011
Email: jroche@perkinscoie.com

*Counsel for Defendant Twitter, Inc.*

/s/ Lindsay Kelly

Lindsay Kelly
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700